FIRST NATIONAL BANK OF CUERO v. COMMERCIAL NATIONAL BANK OF BEEVILLE ET AL.

No. 1433.      Decided June 8, 1905.

**Banking—Agency—Ultra Vires—False Representation.**

A bank, having consented to loan money on the note of a borrower with the vice-president of a bank in another town as surety, sent the note to the latter bank asking that they hand it to the vice-president to have it signed. The vice-president did not live there, and the president mailed it to the borrower to be executed, who returned it signed by himself and with the forged signature of the vice-president. The president returned it to the sender in a letter, signed as president, mentioning the enclosure "properly signed up." The note was not paid, the vice-president when sued sustaining his plea of forgery. In an action by the first bank against the second, and its president personally, to recover the amount held:

(1)   That the president, acting in the matter only for his own bank, was not the agent of the plaintiff bank, nor liable to it on any principle of agency. (Pp. 123, 124.)

(2)   That the defendant bank in procuring the signing of the note was acting in a matter beyond the general scope of banking business, of which those dealing with it must take notice, and was relieved from liability by the doctrine of ultra vires. (P. 124.)

(3)   That the facts did not authorize submission of the issue whether the president was personally liable for having made the statement that the note was "properly signed" without belief in its truth, or recklessly. (Pp. 124, 125.)

Question certified from the Court of Civil Appeals for the Third District, in an appeal from Bee County.

The case, upon a previous appeal, is reported in 97 Texas, 536.

*Davidson & Bailey* and *Lackey & Lewright,* for appellant.—Since this suit is based upon Flournoy's violation of plain instructions given him

by appellant, upon the false statement of fact made by him to appellant that Ray had signed the note described in the pleadings herein, and upon the principle of law that where one of two parties equally innocent of intentional wrongdoing must suffer a loss by reason of the fraud of a third person, the loss must fall on the one who placed it within such third person's power to commit the fraud, it is no defense to this suit to show that said Flournoy acted in good faith in the matter.

Since the undisputed proof in this case shows that both appellant and appellee Flournoy acted with good faith but that Flournoy was guilty of at least some degree of negligence in deviating from appellant's plain instruction, thereby placing it within Smith's power to swindle appellant by forging Ray's name to the $2,066.66 note, the loss thus caused by Flournoy's misplaced confidence in said Smith should be borne by Flournoy and not by appellant.

The court erred in failing to instruct the jury, in some appropriate form, that, ordinarily, it is the imperative duty of an agent to follow strictly the instructions of his principal, and if such agent disobeys such instructions of his principal, he does so at his own risk in case of a loss resulting from such disobedience to instructions, and in failing to apply such principle of law to the facts of this case—the necessity for such a charge having been sufficiently drawn to the attention of the court by means of special charge No. 2, requested by plaintiff but refused by the court.

In view of the fact that Flournoy disobeyed appellant's plain instructions, he can not now escape liability for the injuries sustained by appellant as a direct result of such disobedience, merely by proving that he used due care to procure Ray's signature to the note involved herein— he must go further and show that he was wholly unable, by reason of act of God or like emergency, strictly to follow such instructions, or else that appellant's loss would have resulted even if the instructions had been carried out to the letter.

*Beasley & Beasley,* for appellee Jno. W. Flournoy.—Flournoy was not the agent of plaintiff; stood in no relation of privity and confidence to it; owed it no duty as agent, and was not responsible to it as such; and the court did not err in refusing to instruct the jury as suggested by plaintiff's special charge. Mechem on Agency, secs. 439, 545, 546, and note 3, 547, 548, 557; 1 Am. & Eng. Enc. Law, 1127, subd. d, 1122, secs. cc; Commercial Nat. Bank of Beeville v. 1st Nat. Bank of Cuero, 97 Texas, 536.

The statement contained in the letter from Flournoy to plaintiff, to the effect: "Enclosed you will find note of Wm. H. Smith properly signed up," and was not made by Flournoy with the affirmation that he knew it to be true, or that he made it as of his own knowledge, and there was no false assumption of knowledge on his part.

Even though the representation made by Flournoy to plaintiff to the effect that the note was "properly signed up" was untrue, nevertheless, this being an action of deceit, strictly speaking, Flournoy would not be liable if he made the statement in the honest belief that it was true and had good reasons for so believing after having exercised reasonable care

and diligence in informing himself about the matter. In actions of deceit scienter as general rule necessary: Am. & Eng. Ency. L., vol. 14, p. 86, and note 7; 2 Pom. Eq., sec. 888. Scienter not necessary in few jurisdictions, Am. & Eng. Ency. Law., vol. 14, p. 90, and sec. 5, note 5. Rule different where representation amounts to a warranty: Am. & Eng. Ency. L., vol. 14, pp. 87-88; Id., p. 101, sec. "f," note 6; Lovelace v. Suter, 67 S. W. R., 739. Rule different where representation relied on to defeat specific performance, or to rescind or cancel a contract or conveyance: Am. & Eng. Ency. L., vol. 14, p. 90, 91, note 5, at bottom p. 90; Id., pp. 93-94, see note 1; 2 Pom. Eq., sec. 889; Lovelace v. Suter, 67 S. W. R., 739. Scienter necessary where representation is to solvency or credit of another: Am. & Eng. Ency. L., vol. 14, p. 103, and note 4. The law in Texas as to actions strictly of deceit: Giddings & Giddings v. Baker, 80 Texas, 308; Texas Loan Agency v. Swayne, 27 S. W., 183. Scienter Implied from reckless statement: Am. & Eng. Ency. L, vol. 14, p. 97, sec. 4. False assumption of knowledge: Am. & Eng. Ency. L, vol. 14, p. 97, sec. 5; reason of rules, Id., p. 99, sec. 5. Circumstances under which duty to know imposed: Giddings v. Baker, 80 Texas, 308; Texas Loan Agency v. Swayne, 27 S. W. R., 183; Am. & Eng. Ency. L., vol. 14, p. 95, sec. 2. Actual fraud necessary to sustain an action strictly of deceit: Giddings v. Baker, 80 Texas, 308; Lovelace v. Suter, 67 S. W. R., 739, and cases therein cited; Trimble v. Reid, 31 S. W. R., 861.

BROWN, ASSOCIATE JUSTICE.—Certified question from the Court of Civil Appeals of the Fourth Judicial District, as follows:

"In the above styled and numbered cause, pending on motion for rehearing in this the Court of Civil Appeals for the Fourth District of Texas, the following certified question of law is by direction of this Court of Civil Appeals submitted to your honorable court for determination, by reason of a dissent.

"The facts of the case (which are undisputed, except as to the issue of forgery) are given in the majority opinion of this court, prepared by Justice Neill. The same are hereto annexed.

"Upon those facts the majority have concluded, in the opinion filed, that the judgment of the district court in favor of Flournoy should be reversed and the cause remanded, because the trial court failed to submit with the issue of forgery the issue whether or not the statement made by Flournoy was made without belief in its truth, or recklessly made, careless whether it was true or false.

"Chief Justice James has filed a dissenting opinion in which he concurs in the reversal of the judgment and the remanding of the cause for another trial as to the liability of Flournoy, but holds that on the said testimony the above issue is not a proper one in the case, and that the sole issue to be tried on said testimony, is whether or not the note sent by Flournoy to the appellant was a forgery, in reference to the signature of Ray thereto.

"The question certified is whether or not the issue indicated in the majority opinion should be submitted."

### CONCLUSIONS OF FACT.

"About November 21, 1901, William H. Smith, desiring to borrow $2,000 from appellant, offered as his security therefor, James F. Ray, one of the Vice-Presidents of the Commercial National Bank, of Beeville. The appellant having upon inquiry become satisfied as to Ray's financial standing, and being willing to make the loan with him as security wrote and mailed to the Commercial National Bank, of Beeville, Texas, this letter: 'Cuero, Texas, November 26, 1901. Commercial National Bank, Beeville, Texas. Gentlemen: A few days since we had a letter from W. H. Smith, Mineral, Texas, making application for a loan of $2,000 and offering as security, Mr. James F. Ray, Vice-President of your bank. Will you do us the kindness to hand the enclosed note to Mr. Ray for signature by himself and Mr. Smith? Thanking you in advance, I am, etc., Lee Joseph, Cashier.' Enclosed with the letter was a note for $2,066.66, of date November 27, 1901, due 120 days from its date, payable to the order of appellant at Cuero, Texas, bearing ten percent interest from maturity until paid, and stipulating in the usual form, for ten percent attorney's fees in case of suit, etc.—the note being ready for the signature of Smith and Ray.

"The letter with the note was received at Beeville, Texas, by the Commercial National Bank, of Beeville, on November 27, 1901, and was opened by its President, Mr. Flournoy, who was daily in the bank's office and giving attention to its business. James F. Ray was not then in Beeville, nor did Mr. Flournoy know just where he was. Soon after receiving the letter, Mr. Flournoy mailed the note accompanying it to William H. Smith, at his home in Mineral, accompanied by a letter requesting Smith to sign it, procure Ray's signature thereto, and then return it to him, Flournoy.

"When Smith received Mr. Flournoy's letter enclosing the note, he signed it and also forged the name of James F. Ray thereto, and on November 30, returned the note to the Commercial National Bank accompanied by this letter: 'Pettus, Texas, 11-30-01. The Commercial National Bank, Beeville, Texas. Dear Sirs: Enclosed find note as per request. You will please forward it to Cuero Bank and tell them to place to my credit. Respectfully, William H. Smith.' This letter was mailed at Pettus, Texas, and received by Mr. Flournoy, at Beeville, on the same or the next day. On December 2, 1901, Mr. Flournoy wrote and mailed to the appellant the following letter: 'Beeville, Texas, 12-2-1901. First National Bank, Cuero, Texas. Dear Sirs: Enclosed you will find note of Wiliam H. Smith, properly signed up. He wants the proceeds of said note placed to his credit. Yours truly, John W. Flournoy, President.' This letter with the enclosed note was received by appellant at Cuero, Texas, on December 4, 1901. When the letter and note were received, appellant paid $2,000 on the note to Smith through the bank at Goliad. When the note became due, appellant sued Smith and Ray thereon and recovered judgment against the former, but Ray, having plead under oath and proved that the note as to him was a forgery, judgment was rendered in his favor.

"None of the money nor interest paid by appellant to Smith on the

note has ever been repaid, and Smith was and has been ever since the note was executed, wholly insolvent, and he is now in the penitentiary serving out terms for several forgeries, including the one referred to.

"The appellant was not acquainted with the signature of Ray, but relied solely upon the letter of Mr. Flournoy accompanying the note, as to the genuineness of the signature thereto, and believing from the statement in the letter that the note was 'properly signed up,' being without knowledge or suspicion that Ray's name was forged, let Smith have the money, which it would not have done had it not been so induced by Mr. Flournoy's letter to believe that Ray's signature was genuine.

"Upon the questions as to whether Mr. Flournoy was guilty of fraud and deceit in not handing the note, as his bank was requested by appellant's letter of November 26, 1901, to Mr. Ray, and instead of doing so, sending it directly to Mr. Smith as he did, and after receiving it from Smith, in sending it to the bank accompanied with his letter of December 2, 1901, stating that it was 'properly signed up,' the evidence is substantially as follows: He made no effort to get the note into Ray's possession, though he knew that Ray then lived and had resided for six years prior thereto, at Pettus, Bee County, Texas, and he, Flournoy, had frequently during those six years addressed letters to him at that place where they were always received by Mr. Ray. Ray was then vice-president of the Comercial National Bank, of Beeville, but seldom visited there—probably not oftener than once every two months—and such transactions as appellees had with him prior to November 27, 1901, had been conducted by correspondence with him addressed to him at his post-office, Pettus, Texas. He (Mr. Flournoy) testified upon these questions as follows: 'The reason why I did not mail the note to Mr. Ray at Pettus, instead of mailing it to Mr. Smith at Mineral, was that I thought appellant's main object was to get the signature of these parties to the note, and I supposed that the most expeditious way to do it was to send the note to Smith because he would attend to the matter. Mr. Ray had another ranch, beyond Mineral City, in Live Oak County, and he was often at that ranch; sometimes when I have written him—his mail was delayed several days on this account—he would be at his ranch in Live Oak County. I did not know at that time whether he was at home or whether he was at his ranch. I violated the instructions contained in the letter of the Cuero Bank enclosing us a note, because I thought their object was to get the signatures of Ray and Smith to the note, and by mailing the note to Smith, this would be accomplished in the most expeditious way. I never thought one way or the other about the First National Bank, of Cuero, being particularly anxious that the note be put in Mr. Ray's hands, either by handing it to him or mailing it to him; my only idea was that they wanted to get the two signatures to the note. At that time I thought Mr. Smith was honest and would get Ray's signature to the note. In sending that note to Smith and relying upon Smith to procure the signature of Ray, I thought that was the speediest way to close the matter up and I thought it a safe way. I inferred from Mr. Joseph's letter that Mr. Smith and Mr. Ray were strangers to him. When I received this letter from Mr. Smith (the letter of November 30, 1901, to the Commercial National Bank), I did

not take any steps to ascertain whether or not Mr. Ray was then at his home in Pettus. During the time the note was in my possession or the possession of the bank, I did not make any investigation at all to ascertain if Mr. Ray signed the note, except to investigate the signatures. I examined the signature of Mr. Ray when the letter was opened. After I made the examination I took the signatures to be those of Ray and Smith. There was nothing else done to verify the signatures on the , note, except, I think, Mr. Miller, the bookkeeper of the bank, was standing with me when I opened the mail, and I laid the note down and Mr. Miller or I made the remark it was signed up by Mr. Ray and Mr. Smith; I don't remember whether I made the remark or whether Mr. Miller did. When I wrote to the First National Bank, of Cuero, that the note had been properly signed by Mr. Ray, I relied solely and entirely upon the belief of Smith's integrity and in my belief that I knew that to be the genuine signature of Mr. Ray, corroborated by the bookkeeper, Mr. Miller. I had no other reason to believe that Mr. Ray had actually signed the note. Up to that time I had no reason whatever to suspicion Mr. Smith's integrity. If the forgery of Mr. Ray's signature had not been very skillfully done, I think I would have noticed it when I examined it that day at our bank. When I examined the signatures I did not have any doubt or suspicion about that being the genuine signature of Mr. Ray, and I didn't examine the signature to see that it was genuine; such a thing never entered my mind. At the time I wrote the letter saying that I enclosed the note of Wiliam H. Smith properly signed up, I believed that statement to be true. In his dealings with our bank Smith always showed himself to be a man of fairness and uprightness and always came up honest and fair in every transaction he had with us. I had no reason whatever, or no grounds whatever, for believing or suspecting, or thinking, that either of the signatures to the note was a forgery. Prior to the time of this transaction I made a loan to Smith with J. F. Ray as surety, and the matter was consummated by my sending the note to Smith to get Ray's signature to the note; the transaction was accomplished in the same manner as we did this one with Smith.

"Mr. Joseph, the cashier of the First National Bank, of Cuero, testified: 'I prepared the note to be signed by Smith and Ray, and sent it to the Commercial National Bank, at Beeville, so that they could get the signatures of Ray and Smith; my purpose in sending it to them was to get the signatures of Ray and Smith. In my letter enclosing the bank note to the Commercial National Bank, I asked the bank to hand the note to Mr. Ray. My purpose in sending the note to them was to get the signatures of Ray and Smith. The reason I asked the bank to hand the note to Mr. Ray was, I thought they would attend to it properly, i. e., would get the signatures of Mr. Ray and Mr. Smith.' "

We agree with the majority of the Court of Civil Appeals, that Flournoy was not the agent of the First National Bank, of Cuero. That bank did not look to Flournoy as its agent and he did not purport to represent it but acted as the president of the Commercial National Bank, of Beeville. There are no words used which bind Flournoy personally. The letter in which the Cuero Bank transmitted the note to

the Beeville Bank was addressed to "The Comercial Bank, of Beeville." The reply was signed by Flournoy, "President," showing conclusively that the Cuero Bank regarded the Beeville Bank as its agent, while Flournoy was acting for the Beeville Bank; in fact, acted only in his official capacity as president of that bank. These facts establish conclusively that there was no relation of principal and agent between Flournoy and the Cuero Bank, and no liability can be predicated upon the fact of agency. Flournoy, as president of the Beeville Bank, performed an act which the corporation had no power to perform; he did not bind the bank, but having made no misrepresentation, he did not bind himself. Holt v. Winfield Bank, 25 Fed. Rep., 812; Abeles v. Cochran, 22 Kans., 410; 29 Am. & Eng. Ency. Law, p. 72c. In Holt v. Bank, Judge Brewer said: "Every person who deals with corporations is chargeable with notice of the general scope of their powers. If he deals with an insurance company he knows that it is insurance business that the company is authorized to transact. So if he deals with a bank he knows that it is banking business that that bank is authorized to transact, and none other. He has the same general knowledge that the officers of the bank have. Of course, where there is a concealment of a fact within the special knowledge of the party making the representation or making the signature, he may be bound. If, for instance, the bank had power to make such a contract as this, provided the directors assented, and defendant had represented to the plaintiffs that the directors had assented. when in fact they had not, then unquestionably a failure to hold the bank liable would cast a liability upon him; but when a man deals with an officer of a corporation, and no representations are made by that officer, and that officer simply proposes to bind the corporation, and as a matter of fact the corporation is not bound, and is not bound simply because the contract is ultra vires of that corporation, the individual making the subscription is also not bound." The mistake of Flournoy as to the power of his bank could not create a liability on him that did not grow out of improper action by him in the transaction.

For a different reason to that assigned by him, we agree with Chief Justice James that the issue proposed by the majority of the Court of Civil Appeals should not be submitted to the jury, because there is no evidence upon which the jury could find that Flournoy at the time he wrote the letter returning the note to the Cuero Bank did not believe it to be genuine, nor that he acted in a reckless manner, nor in careless disregard of the truth of the matter. Evidently the officers of the Cuero Bank thought Ray would be about the Beeville Bank, and for that reason directed the note to be "handed to Ray." The object of handing the note to Ray was to secure his and Smith's signatures. The Beeville Bank was not by this language charged with the duty of seeing that Ray signed the note, or that his signature was genuine. The genuineness of Ray's signature was not then in the minds of any of the parties. Ray being absent and inaccessible to the bank, the most natural thing for Flournoy to do was to send the note to Smith who was accessible, in order that Smith might sign it and get Ray to sign it also as his surety, which would have accomplished the purpose indicated by the letter of

the Cuero Bank, and would have satisfied the undertaking on the part of the Beeville Bank. When Smith returned the note to the Beeville Bank with the names of himself and Ray subscribed thereto, there was not a fact or circumstance in the transaction which would have justified the Beeville Bank in calling upon Smith to establish the genuineness of Ray's signature before sending the note to the Cuero Bank. The appearance of the name Ray and the character of Smith, together with his relationship to Ray, were sufficient to satisfy the mind of any ordinarily prudent man that the note was "properly signed up." When Flournoy returned the note to the Cuero Bank stating it was "properly signed up," the genuineness of the signature of Ray was not in question, and that statement did not under the facts of this case, amount to a representation on the part of Flournoy that Ray's name had not been forged. The proof shows without contradiction that from inspection of the name and under the facts, Flournoy did believe that Ray had signed the note, and his statement made to the bank with reference to the note was not made without belief of its truth, nor was it made recklessly and without regard to whether it was true or not. No fact or circumstance raises a suspicion that Flournoy did not believe that the note was properly signed, or that he was wanting in a due and proper care in the transaction of the business. Under this state of facts the case comes within the rule laid down in Holt v. Bank, before cited. The acts performed by Flournoy as president of and for the Beeville Bank were beyond the authority of that bank, but were believed by Flournoy to be within its authority. He made no representation or statement with regard to the authority of the bank to perform the acts, nor with regard to the genuineness of Ray's signature which could have misled the Cuero Bank. Therefore, under no phase of the facts is there any evidence which would raise the issue that is proposed by the majority to be submitted to the jury upon another trial of the case.