## CITIZENS' NAT. BANK OF JASPER v. RATCLIFF & LANIER. (No. 769.)*

(Court of Civil Appeals of Texas. Beaumont. Feb. 22, 1922. Rehearing Denied March 8, 1922.)

1. **Bailment** 14(1)—**Bailee held to exercise ordinary care if bailment is for mutual benefit.**

A gratuitous bailee is not liable for loss of goods in the absence of proof of gross negligence or bad faith, but where the bailment is for the mutual benefit of the parties, whatever may be the nature of the benefit of the bailee, the bailment is not gratuitous, and the bailee is held to the exercise of ordinary care.

2. **Banks and banking** 194—**Bank in possession of depositor's bonds for purpose of sale held a bailee for mutual benefit.**

Where bank agreed to sell bonds of regular depositor without commission or compensation, but with the understanding that proceeds would be deposited in the bank without payment of interest by bank until checked out by depositor in the usual course of business, the bank was not a gratuitous bailee, but the bailment was one for the mutual benefit of the parties, requiring the bank to exercise ordinary care.

3. **Banks and banking** 194—**Sending of unregistered envelope containing bonds through mail held negligence.**

The sending of envelope containing bonds through the mail without registration of envelope by employés of bank having possession of bonds of depositor for the purpose of sale *held* negligence.

4. **Negligence** 1—**"Negligence" defined.**

Negligence consists in doing something or omitting to do something which a person of ordinary care would not have done or would not have omitted to do under similar circumstances.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Negligence.]

5. **New trial** 124(1)—**Motion not disclosing source of information as to existence of newly discovered evidence, or probative force thereof, properly overruled.**

Motion for new trial on the ground of newly discovered evidence, not disclosing the source of movant's information as to the existence of such evidence, and not stating the probative force thereof, *held* properly overruled.

6. **New trial** 108(1)—**Newly discovered evidence must probably change result on another trial.**

Evidence claimed to be newly discovered should be shown to be of such character and probative force as would probably change the result on another trial.

Appeal from District Court, Jasper County; V. H. Stark, Judge.

Suit by Ratcliff & Lanier against the Citizens' National Bank of Jasper and another.

Judgment for plaintiffs against named defendant and named defendant appeals. Affirmed.

Smith & Lanier, of Jasper, for appellant.
G. E. Richardson, of Jasper, and Wightman & Forse, of Newton, for appellees.

HIGHTOWER, C. J. The appellees, Ratcliff & Lanier, a mercantile copartnership composed of B. S. Ratcliff and T. B. Lanier, filed this suit in the district court of Jasper county against appellant, Citizens' National Bank, of that place, and John H. Seale, Sr., who is the cashier of said bank, seeking to recover the value of two Liberty Bonds issued by the national government, and being of the class known as the fourth loan issue, and each bond being for the amount of $500, and made payable to bearer. There are two counts in the plaintiff's petition, the first claiming liability against defendants as for conversion of said bonds, and second, alleging that, in the event it should be determined upon trial that the bonds were not converted, then both the bank and Seale were liable as bailees to the plaintiffs for the value of said bonds, in consequence of negligence on their part which resulted in the loss of the bonds.

The defendants filed a joint answer, consisting of general demurrer and general denial, and the bank pleaded specially that the transaction between the parties made the basis of this suit was, so far as the bank is concerned, ultra vires, and that therefore no liability upon either count of the petition could be established against the bank.

The facts upon which the judgment rests are wholly without dispute, and the only issue submitted for the jury's consideration was as to the value of the bonds.

On February 27, 1920, appellees were the owners of the above-mentioned bonds, and for some time prior to that date kept them in a safety deposit box in appellant bank, to which appellees had free access, and over which they exercised complete control. On the day mentioned, Mr. Lanier of the firm went to the bank and took the bonds from the safety deposit box and turned them over to Mr. John H. Seale, in his capacity as cashier of the bank, with the request that the bank sell the bonds for appellees upon the best terms obtainable, and deposit the proceeds in the bank to the credit of the appellees. At that time appellees were regular customers of the bank, and regularly carried a deposit in the bank, and the bank was engaged in the regular banking business under the banking laws of the United States. The bank was not in the market for purchasing such bonds, but Mr. Seale testified that the bank for some time had been handling such bonds for its customers in general, when requested to do so, and making sales of them where it could, and would de-

posit the proceeds in the bank to the credit of its customers. As to this particular transaction, Mr. Seale testified, substantially, that he told Mr. Lanier that the bank would send these two bonds to its correspondent bank at Houston, the First National Bank of Houston, with instructions to sell the same upon the best terms obtainable, and that, when such sale should be made and the proceeds received, the same would be deposited in the bank and the appellees credited therewith. Mr. Lanier testified that he did not remember whether Mr. Seale made any statement to him as to where or to whom the bonds would be shipped for sale, but that he did understand that they were to be sold by the bank as stated, and the proceeds deposited to the credit of his firm in the bank.

At the time of this transaction between Mr. Seale and Mr. Lanier, there was employed as bookkeeper and stenographer in the bank a young lady, Miss Henderson, about 20 years of age, and on the same day of the transaction between the parties, Mr. Seale, acting for the bank, dictated a letter to the First National Bank of Houston, in which he stated that he was inclosing the two bonds mentioned, and requested the Houston bank to make a sale of the bonds for their best market value, and to credit the account of the Citizens' National Bank of Jasper with such proceeds on the books of the Houston bank. Mr. Seale testified, and there is no dispute on the point, that he was careful to instruct Miss Henderson to register the letter in the post office at Jasper before placing it in the mail. The young lady, Miss Henderson, testified by deposition, and stated, substantially, that she wrote the letter as dictated by Mr. Seale, and placed it, together with the bonds, in an envelope, and took it to the post office at Jasper on the same day, with the intention of having the same put in the registered mail and taking a receipt therefor; that the envelope was sufficiently stamped for registration and marked as a registered package before it left the bank's office, but that when she got to the post office she found the registry window closed, and in keeping with the custom of the bank, under such circumstances, she placed the envelope in the post office box without taking any registry receipt therefor. She testified that on numerous occasions prior to this she had so deposited packages intended to be registered in the post office, and that usually the postmaster at Jasper would issue a registry receipt to the bank and place it in the bank's mail box, and that with the next incoming mail to the bank the bank would receive such registry receipt. On this occasion, however, the testimony is undisputed to the effect that the post office at Jasper did not issue any registry receipt for this mail package, and, when this was discovered a day or two later, appellant instituted an inquiry about the matter, and learned from the post office employés that such registry receipt had not been issued, and on not hearing from the Houston bank within the expected time relative to these bonds, appellant instituted an active inquiry, with a view to locating them. The Houston bank denied receiving the bonds at all, or any letter concerning them, and after long and persistent inquiry and efforts to find these bonds or some trace of them appellant was unable to do so, and the bonds were never returned to appellees, and the appellant refused to credit appellees with the value thereof, as was agreed. This refusal on the part of appellant to return the bonds or account to appellees for their value resulted in this suit.

The only issue submitted for the jury's consideration was as follows:

"Was the defendant the Citizens' National Bank, its cashier or employés, negligent in preparing for transmission and transmitting to the First National Bank of Houston the bonds described in plaintiffs' petition? You will answer this question Yes or No, as you find the fact to be."

To this issue the jury answered in the affirmative. In connection with the issue and as guiding the jury in its determination, the court defined negligence as follows:

"Negligence consists in doing something or omitting to do something which a person of ordinary care and prudence would not have done or would not have omitted to do under like or similar circumstances."

The court instructed the jury further that the burden of proof was upon the plaintiffs to establish by a preponderance of the evidence negligence on the part of the bank as claimed.

Upon the verdict of the jury, the court rendered judgment in favor of appellees against the Citizens' National Bank of Jasper for the sum of $933.44, with interest on that amount from the 28th day of February, 1920, at the rate of 6 per cent. per annum. There is no contention as to the amount of the judgment, because in rendering judgment upon the jury's verdict the court based the amount of the judgment upon the value of the bonds, at the time of their loss, as shown by the testimony of Mr. Seale himself. As to the defendant Seale individually, the judgment was in his favor, and the undisputed proof shows that he acted in the transaction solely as the cashier and agent of the bank, and not in his individual capacity. Appellant, the bank, filed its motion for a new trial, which was overruled, and the case comes here on five assignments of error.

[1] The first four of these assignments relate practically to the same contention made by appellant, both below and here, which is, in substance, that the undisputed evidence in this case showed that the Citizens'

National Bank, appellant, was wholly a gratuitous bailee in its contract to sell the two bonds for appellee, and that, being wholly a gratuitous bailee, there could be no liability against appellant in the absence of proof of gross negligence or bad faith on its part in handling these bonds. If counsel for appellant were correct in their contention that appellant, under the facts of this case, was a gratuitous bailee in handling these bonds, they would also be correct in their contention, according to the weight of authority as we find it, that no liability could be established against appellant in the absence of proof of gross negligence or bad faith. This seems to be the general rule. 3 Am. & Eng. Enc. of Law (2d Ed.) 745. This rule seems to have been adopted by the Supreme Court of this state at an early date, as shown by the decision in Fulton v. Alexander, 21 Tex. 148. See, also, Texas Central Railway Co. v. Flanary (Tex. Civ. App.) 50 S. W. 726. But it also well established as a general rule that where the bailment is for mutual benefit of the parties to the transaction, whatever may be the nature of the benefit to the bailee, the bailment is not gratuitous, and in such case the bailee is held to the exercise of ordinary care. In other words, where the bailment is for mutual benefit of the parties, the bailee must be responsible for breach if only ordinary negligence be shown. 5 Cyc. 184. The author cites in support of this rule authorities from practically every state in the Union.

[2] Counsel for appellant, upon the trial of the case, requested the trial judge to submit to the jury the issue as to whether appellant, upon the facts of this case, was guilty of gross negligence in failing to register the letter to the Houston bank containing these bonds; this request being made in keeping with appellant's contention that the bailment in this case was wholly gratuitous on its part, and was for the sole benefit of the appellees. The court refused to submit such issue for the jury's answer, and it is our conclusion that there was no error in this action. While Mr. Seale testified that the bank was to receive no commission on the sale of these bonds, nor any other compensation in the way of money for the bank's trouble and time in making the sale for appellees, and while this testimony on his part is wholly uncontradicted, yet he further very frankly admitted that the appellees were regular customers of the bank at the time of this transaction, and carried a regular deposit there, and that it was the intention between the parties at the time of the transaction that, when the proceeds of the bonds should be received, they would be deposited with appellant, and that the bank expected to have, and would have had, the benefit of such deposit without the payment of any interest by the bank thereon, and that such deposit would have remained with the bank until checked out by appellees in the usual course of a banking business. Of course, Mr. Seale was unable to say how long the bank would have had the benefit of this deposit and use of the money without interest, but it certainly cannot be consistently held that a banking institution receives no benefit from a deposit of money by its customers, and especially where such deposits draw no interest in favor of the customer. On the contrary, it is probably true that large financial benefits are derived by banking institutions from such deposits. The fact that it could not be said how long such deposit may remain with the bank or in what amounts it would be checked out cannot, we think, have the effect to deny that the bank receives no financial benefit from such deposit. A great array of authorities is cited by the energetic and able counsel for appellant, supporting their proposition that a gratuitous bailee cannot be held liable for loss or damage in the absence of a showing of gross negligence or bad faith, and we have read many of such authorities, but none of them go so far as to hold that a banking institution is a gratuitous bailee upon facts parallel to those in this record. We, therefore, conclude that counsel for appellant are wrong in their contention that the appellees in this case were not entitled to recover for ordinary negligence as shown, but only upon a showing of gross negligence or bad faith, and therefore we hold that the court was not in error in its refusal to submit the issues of gross negligence to the jury.

[3] The claimed negligence was based upon the failure on the part of the bank and its employés to register in the regular way and take a receipt for the letter containing these bonds, and the judgment is based upon the finding of the jury that such failure on the part of appellant and its employés was negligence, and this verdict of the jury finds sufficient support in the evidence of Mr. Seale himself. Mr. Seale frankly, while a witness on the stand, stated that he was careful to instruct Miss Henderson to register the letter containing these bonds, and stated that he knew that it was not good business, and that it was unsafe to send bonds of this character and of such large denomination through the open mail, and it is very clear from his entire evidence that had his instructions been obeyed by Miss Henderson, these bonds would have been properly registered and a receipt taken before being placed in the mail. Now, it is, of course, unfortunate that the bank has to be responsible for this loss to appellees, after its cashier had been careful to instruct that these bonds should be registered, but under the law the bank is responsible for the act of Miss Henderson in failing to comply with Mr. Seale's instructions, upon the finding of the

jury that Miss Henderson's failure to register the letter containing these bonds was negligence; and appellees were entitled to the recovery awarded them.

[4] There is a suggestion in appellant's brief that the definition of ordinary negligence as given by the court as a guide to the jury was not sufficient to properly safeguard appellant's rights in this case, but we cannot agree with this contention. The definition of ordinary negligence, as we have above quoted it, was one which has been many times approved by the appellate courts of this state, and was clearly sufficient to safeguard appellant's rights in this case,

It is suggested in the brief by counsel for appellant that the failure to properly register the letter containing the bonds, if negligence, was not shown to be the proximate cause of the loss of the bonds, and that, therefore, liability on the part of appellant was not established. If proximate cause was an issue of fact in this case, it was not submitted for the jury's consideration, nor do we find anywhere in the record a request that such issue be submitted as one of fact for the jury's consideration, and if it be admitted that the issue of proximate cause would have to be found against appellant in order to establish liability, it will be presumed, in support of the court's judgment on the jury's verdict convicting appellant of negligence, that the court found the issue of proximate cause in favor of the judgment. But as we view the evidence of Mr. Seale himself the issue of proximate cause as one of fact was wholly precluded, because Mr. Seale testified, substantially, that he knew it was unsafe and unbusinesslike to send bonds of the character in question and of such large denomination through the open mail, the reason being that in the event of a miscarriage or loss there would be no check or means by which to trace and locate such bonds or to even show that they ever reached the post office at Jasper. In other words, Mr. Seale anticipated at the time of instructing the young lady to register the letter containing these bonds that it was necessary to do so in order to afford a check and means of tracing them and recovering them in the event of a miscarriage or loss, however caused. It is well known that the very purpose of putting in the registered mail valuable packages is to afford a means of protection and a check by which to trace and locate such valuables in the event of a miscarriage or loss. We say, therefore, that even had the trial court been requested to submit to the jury, as a question of fact, such issue of proximate cause, it would have rightly refused, in view of the evidence of Mr. Seale himself. The record shows clearly that appellant has used every means and effort to locate these bonds and recover them

for appellees, but that, having no check or means or clew by which even to commence a trace, its attempt to locate them has been futile.

What we have said has the effect to dispose of the first four assignments of error, and they are overruled.

[5] By the fifth assignment it is complained that the trial court erroneously overruled appellant's motion for a new trial based upon the ground of newly discovered evidence. This ground of the motion is as follows:

"Because this defendant has, since the trial of this cause, learned that at least one of said bonds reached the First National Bank of Houston, Tex., but that said Houston bank has never remitted to this defendant on said bond. That this newly discovered evidence is material to defendant in this: To show that one of said bonds reached said Houston bank, the bank to which said shipment was made by this defendant, will be sufficient to exonerate from any liability to plaintiffs for the value o' such bond as reached its destination."

[6] It will be observed at once that the motion fails to show how or from whom appellant learned, since the trial, that one of the bonds reached the First National Bank of Houston. So far as the motion shows, appellant's information as to such bond reaching the Houston bank might be based upon the rankest hearsay, or that the source of its information might be such that it would have no probative force whatever. No affidavit of any one is attached in support of the motion, and the source of appellant's information is wholly undisclosed. One of the essential elements of a motion for a new trial based upon the grounds of newly discovered evidence is that the evidence claimed to be newly discovered should be shown to be of such character and probative force as would probably change the result upon another trial. Such has been ruled practically innumerable times by all the appellate courts of this state, and citation of authorities would be superfluous. Applying that test to the motion, it will be seen at once that nothing is shown by the motion relative to the claimed newly discovered evidence that would probably lead the trial court to say that upon another trial appellant would be able to introduce such evidence as would probably change the result of this case, either in whole or in part. This court would be going to the extreme, indeed, were it to hold that the trial court abused its discretion in denying the motion upon the ground of newly discovered evidence. The fifth assignment is therefore overruled.

This disposed of all assignments, and, finding no error in the record of which appellant could justly complain, the judgment will be in all things affirmed. It has been so ordered.