### PARR v. GARDNER et al. (No. 2796.)

Court of Civil Appeals of Texas. Amarillo. March 23, 1927.

Appellant's Motion for Rehearing Denied April 6, 1927. Appellees' Motion for Rehearing Denied April 20, 1927.

**1. Banks and banking ⟺195—Vice president's sale of customer's bonds and investment of proceeds in vendor's lien notes held ultra vires.**

Vice president's sale of customer's Liberty bonds and investment of proceeds in vendor's lien notes *held* without scope of bank's charter powers and ultra vires.

**2. Banks and banking ⟺86—One dealing with bank has notice of limits of its charter powers.**

One dealing with bank has notice of limits of powers given it by its charter.

**3. Banks and banking ⟺101—Bank receiving benefit from officer's fraudulent dealing with customer's funds is liable, though transaction was ultra vires.**

Bank receiving any profit or benefit from its officer's fraudulent dealing with funds intrusted to it is liable to customer, independently of contract, though transaction was ultra vires.

**4. Banks and banking ⟺112—Bank receiving proceeds of customer's bonds in payment of vendor's lien notes held liable for loss because of prior liens.**

Bank receiving proceeds of customer's Liberty bonds, sold by vice president in payment of year old demand notes to bank *held* liable to customer for loss resulting from fact that notes were only third lien on land, though maker was solvent and could have paid notes from other funds.

**5. Banks and banking ⟺195—Bank, not pleading injury by delay in suing for loss by officer's investment of funds in vendor's lien notes without informing plaintiff of prior liens, could not insist on delay as defense.**

Bank, not pleading injury by plaintiff's delay in bringing suit for loss by vice president's investment of proceeds of plaintiff's liberty bonds in vendor's lien notes without informing plaintiff that notes were only a third lien on land, and not pleading vice president's responsibility to bank for such loss, making him party and asking judgment over against him, nor pleading his insolvency as excuse for not doing so, could not insist on such delay as defense.

**6. Estoppel ⟺58—Estoppel cannot arise in behalf of one not prejudiced.**

No estoppel can arise from transaction in behalf of one whose position has not been prejudiced thereby.

**7. Banks and banking ⟺228—Plaintiff suing for loss by bank officer's investment of funds in third lien notes held entitled to instruction that conspiracy with maker may be proven by circumstantial evidence.**

Evidence, in action for loss caused by bank officer's investment of plaintiff's funds in notes constituting only a third lien on land, *held* to entitle plaintiff to submission of instruction that conspiracy between such officer and maker of notes may be proven by circumstantial evidence, though court did not define "conspiracy" in his instruction thereon.

**8. Trial ⟺209—Charge authorizing consideration of circumstantial evidence relied on is proper.**

Where litigant relies on circumstantial evidence, it is proper to charge jury that they may consider such testimony in determining issue.

On Appellant's Motion for Rehearing.

**9. Appeal and error ⟺333—Party's death pending appeal does not alter status of case.**

Death of party pending appeal to Court of Civil Appeals does not alter status of case therein.

Appeal from District Court, Wichita County; H. R. Wilson, Judge.

Action by R. W. Parr against W. W. Gardner and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded in part, and affirmed in part.

E. E. Fischer and T. F. Hunter, both of Wichita Falls, for appellant.

Cox & Fulton, of Wichita Falls, for Wichita State Bank & Trust Co.

W. J. Townsend, of Wichita Falls, and Webb & Webb, of Sherman, for appellees Hamp P. Abney, Mrs. Jeannette Abney, Hanson, and Rainey.

RANDOLPH, J. This suit was filed by appellant, Parr, against W. W. Gardner, the Wichita State Bank & Trust Company, Hamp P. Abney and wife, Jeannette M. Abney, Mrs. Clara Hanson, a widow, and Mrs. Donna Rainey, a widow.

On trial the case was submitted to a jury on special issues, and, on the special issues being answered by the jury, the trial court rendered judgment in favor of all the defendants, and from such judgment Parr has appealed to this court.

The following statement of the nature of the suit is taken, in large part, from the brief of counsel for the appellee Wichita State Bank & Trust Company: The plaintiff's original petition, upon which trial was had, was filed January 9, 1926, and for cause of action alleged, in substance, as follows:

---

⟺For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(a) That the defendant bank was at the times mentioned in said petition doing a general banking business, and, in consideration of benefits derived from the use of money of its customers, pursued the custom of giving service to its customers and loaning money and procuring for them desirable loans and investments (also alleging the bank's corporate powers as set forth in its charter, which will later be discussed).

(b) That the plaintiff was a customer of said Wichita State Bank & Trust Company, and had been for about 10 or 12 years. That plaintiff had left with said bank certain Liberty bonds, aggregating the sum of $2,500, and that on or about August 3, 1922, the plaintiff made known to the bank, through its vice president and agent, W. W. Gardner, that he intended to withdraw said Liberty bonds and to withdraw the proceeds he would receive from the sale of the bonds for the purpose of of investing the same in securities that would draw a higher rate of interest, and further alleged that the defendant W. W. Gardner, acting for himself and for the bank, informed the plaintiff that said banking institution and said Gardner would be able to procure for plaintiff good, well-secured, first lien notes, secured by land of double the value of said notes, and the said Gardner, acting for himself and for said bank, then and there agreed with the plaintiff, in consideration of the existing relation between the said bank and the plaintiff, being that of bank and customer, as aforesaid, to perform such services for plaintiff, and to market his said bonds and purchase notes as then discussed and above mentioned. That the plaintiff relied upon the ability of said bank and its officers and agent to safely invest the proceeds of his bonds, and did then and there agree with said bank, through its vice president, W. W. Gardner, to permit it to sell said bonds and invest the proceeds in good first vendor's lien notes.

Further (c) that, pursuant to said agreement, plaintiff alleged that W. W. Gardner, acting for the bank and for himself, purchased two notes from appellee Hamp P. Abney, of the face value of $2,300 after having sold his bonds for $2,525, and that a few days after said investment by the said Gardner the said Gardner wrote plaintiff a letter, inclosing a deposit slip showing the sale of the bonds of $2,500, and giving plaintiff credit for $225, and stated that this was the amount of the bonds, less $2,300, the amount of the notes and interest. That this letter was adroitly written and misguiding and intended to, and did, mislead the plaintiff, and that he relied upon the bank and the defendant Gardner to handle his investment in a safe and careful manner, and that said letter failed to inform him of the nature of the lien securing his money so invested.

(d) Plaintiff then alleged that the investment was unsafe and resulted in a total loss to plaintiff, because, among other things, said notes so purchased from said Abney were a third vendor's lien, subordinate to an amount of money owing on a $1,500 note and other notes beyond the value of the land, and setting out in detail the transaction between the bank, Gardner, and Abney, alleging a conspiracy between them, the bank and Gardner, as an individual, and the appellees Abney, Mrs. Rainey, and Mrs. Hanson, to defraud plaintiff out of his said money.

(e) The further allegation is made by plaintiff that, pursuant to such conspiracy, when said note secured from Abney became due, Abney filed suit on same in the name of Gardner as plaintiff and Abney as attorney, and that the lien thereon retained was foreclosed and the land bought in in the name of Abney for the nominal sum of $100, and that plaintiff failed to receive any of the proceeds therefrom, and by reason of the transaction lost his entire investment of $2,300.

The jury, by its verdict, made the following findings: (1) At the time that W. W. Gardner negotiated for the notes in question he was acting as an officer or agent of the Wichita State Bank & Trust Company. (2) At the time that W. W. Gardner arranged for the purchase of the notes in question, that the plaintiff, Parr, was dealing with him as an officer or agent of the bank. (3) That, in his relations with W. W. Gardner concerning the sale of the Liberty bonds, and purchase of the notes in question, the plaintiff, Parr, did, in good faith, believe that said Gardner was acting as an officer or agent of the bank. (4) That said Gardner did not use ordinary care to invest with reasonable safety the proceeds from plaintiff Parr's Liberty bonds. (4a) That the notes so purchased by Gardner for Parr were not a reasonably safe investment for the plaintiff at the time of their purchase, under all the facts and circumstances surrounding the transaction. (5) Could not answer. (6) That, after Gardner closed the transaction with Abney for the notes in question, the said Gardner informed plaintiff, Parr, of said purchase within a reasonable time thereafter. (7) That Gardner did not explain to the said Parr the character and full description of the land securing said notes, and the liens existing thereon. (9) That the plaintiff, Parr, did not use reasonable diligence to investigate the condition of said notes after he learned of said transaction from the defendant Gardner. (10) That the defendants Abney and Gardner and Mrs. Hanson, nor any two of them, did not enter into any agreement or understanding for the purpose of defrauding plaintiff, Parr, out of the proceeds of his Liberty bonds, or any part thereof. (13) That, at the time of the filing of the suit at Sherman, and the taking of judgment thereon, Hamp P. Abney was not representing the plaintiff, Parr. (14)

When Abney bid in the property at Sherman he was not representing the plaintiff, Parr. (15) That Abney made a profit in the resale of said land or the notes executed by Brodley as part of the purchase price thereof. (16) That the amount of profits so made by Abney was $5,000 in second lien notes. (17) That none of the other defendants knew of such profit being made, and did not consent thereto. Special issue No. 4: (18) That the plaintiff executed and delivered to defendant Gardner the quitclaim deed, dated May 4, 1922, with the understanding between Gardner and Parr that Gardner should use the same as he thought best. Special issue No. 5: (19) That the value of the land near Sherman, Tex., securing the notes taken by Abney and sold to Parr through Gardner, on August 1, 1922, and foreclosed on, was $100 per acre. Special charge No. 7: (20) That the defendant Abney was directed by the defendant Gardner to file the foreclosure suit at Sherman.

The following provisions of the charter of the defendant bank are cited as sustaining plaintiff's claim that the bank was authorized to conduct the business it did conduct for the plaintiff, to wit: (2) To receive deposits of trust money and loan money on real estate. (7) To accept and execute any and all such legal trusts, duties, and powers in regard to holding and managing and disposing of any estate, real or personal, rents, profits, etc. (8) To take, accept, and execute any and all such trusts and powers of whatever nature or description as may be conferred or intrusted to it by any person, body politic, corporation, or other authority, by grant, devise, bequest, assignment, etc., or which may be intrusted or committed to it by an order of court, and to receive, take, and hold any property or estate which may be subject to such trust. (9) To purchase, invest, and sell stocks, bills of exchange, bonds, and mortgages and other securities, and, when money or securities for moneys are borrowed or received on deposit or for investment, the bonds or obligations of the company may be given therefor, but it shall have no right to issue bills to circulate as money.

The questions before us with relation to the suit as against the Wichita State Bank & Trust Company are: (1) Was the bank acting within its corporate powers in transacting the business as alleged? (2) Was Gardner the agent of the bank and acting for the bank within the scope of his authority, or apparent scope of his authority? (3) Was the bank guilty of negligence by reason of the acts of its agent, Gardner, in making said investment? and (4) Did the bank receive any benefits that would make it liable for the conduct of its agent, Gardner, even though the transaction was ultra vires and without the scope of its charter powers?

[1, 2] In discussing these questions, we are of the opinion that the transaction by Gardner, as vice president of the bank, and acting for the bank, was without the scope of the bank's charter powers, and was clearly ultra vires. City National Bank v. Morgan (Tex. Civ. App.) 258 S. W. 572, and the authorities there cited. It is also held that one dealing with the bank has notice of the limits of its powers given by its charter. Volume 14 A. C. J. pp. 587 and 588; First National Bank v. Commercial National Bank, 99 Tex. 118–124, 87 S. W. 1032.

[3, 4] But there is another phase of the case which requires discussion, and which renders the bank liable in this case, even though the transaction was ultra vires. The bank should be held, independently of the contract or any liability on the contract, for its fraudulent dealing with plaintiff's funds intrusted to it, if the bank received any profit or benefit from the transaction, and, as stated by Judge Boyce in the Morgan Case, supra, such a fraud, if committed, was such a wrong, independent of the contract, as would afford the plaintiff a cause of action for the damages resulting therefrom. In the Morgan Case the jury found that the plaintiff had no contract with the bank, but that its contract was with Koger in his individual capacity. To the contrary, the jury in this case found, and, we think, upon sufficient evidence, that the transaction had with Parr was a transaction between Parr and the bank, and that the contract as such was one with the bank, and not with Gardner.

Again, quoting from Judge Boyce's opinion in the Morgan Case:

"If it be true that Koger, as plaintiff's agent for the loan of the money, acted in bad faith toward him, lending the money to a person known to him to be insolvent, for the purpose of securing the payment of such insolvent's debt to the bank, then we think the bank might, under proper allegations, be responsible to plaintiff. The appellant contends that the bank would not be liable in such case because it had no knowledge, except through Koger, of the breach of trust and that Koger's knowledge could not be imputed to it. With this contention we cannot agree. We refer to a few of the numerous authorities that might be cited in this connection [citing authorities]."

In this case, as in the Morgan Case, it does not appear that the bank's officers or agent had any individual interest adverse to that of the bank. On the face of the record it appears that Gardner's conduct was wholly in the interest of the bank; it nowhere being shown that any of this money went to Gardner individually.

It appears from the evidence that in the transaction between Abney and Gardner, in which Gardner is shown to have purchased the vendor's lien notes from Abney, the money so realized went in large part to pay Abney's indebtedness to the bank, and that Abney made the trade with Gardner for the

purpose of paying his note at the bank. To that extent the bank benefited by the transaction. It is true that Abney shows that he was solvent and could have paid the bank's note out of other funds, but that does not alter the fact that the bank had a note paid out of the money so received, which note was a demand note, and which was about a year old, and that Abney had not paid it, and that the bank wanted its money, and through its vice president made such trade with Abney as secured the payment of the note. Citizens' State Bank v. Ratcliff & Lanier (Tex. Civ. App.) 238 S. W. 362, affirmed in (Tex. Com. App.) 253 S. W. 253; First National Bank v. Greenville Oil, etc., Co., 24 Tex. Civ. App. 645, 60 S. W. 828; Gill v. First Natioal Bank (Tex. Civ. App.) 47 S. W. 751; Panhandle National Bank v. Emery, 78 Tex. 498, 15 S. W. 23.

While Gardner was the vice president of the bank, active in its affairs, we do not, in view of our holdings as set out above, deem it necessary to discuss the question as to whether or not Gardner was acting within the apparent scope of his authority.

[5] The jury found that the plaintiff, Parr, did not use reasonable diligence to investigate the condition of the notes after he learned of the transaction of the purchase of the notes from Abney by Gardner, and that the plaintiff is thereby estopped from recovery against the defendant bank.

The defendant bank, in pleading the negligence of the plaintiff after he had full knowledge of all the facts in connection with the transaction of the purchase of said notes from Abney, and after he was informed by the said Gardner of the liens that were outstanding and was shown in detail all the conditions of the trade, nowhere alleges any facts to show that the bank was injured by the plaintiff's delay in bringing the suit. However, the jury found that Gardner informed plaintiff of the purchase of the notes from Abney, but they also found that Gardner did not inform the plaintiff of the character of the notes nor give him a full description of the land securing the notes and liens existing against the land.

It appears from the evidence that, on the closing of the trade with Abney for the notes, Gardner wrote the following letter to the plaintiff:

"Mr. R. W. Parr, Iowa Park, Texas—Dear Sir: Inclosed find duplicate deposit ticket for $225, the net proceeds from the sale of $2,500 worth of Liberty bonds, less the $2,300, the amount of notes and interest, which I have this day had transferred to you. This note covers 230 acres of land located within one mile of the town of Sherman and is a very desirable tract of land. I had the pleasure of inspecting this land about a week ago, and I know that the note is all right.

"Yours very truly,
"W. W. Gardner, Vice President."

The evidence shows that at the time plaintiff got that letter he did not know that there were any other liens on the land. He had agreed with Gardner that only first lien notes were to be bought. No opportunity was given him to accept or reject the Abney notes; the whole transaction was closed, and the bonds sold, and the money received from the proceeds paid over to the bank on the Abney note at the time he was so imformed in the letter by Gardner. In August, 1922, the plaintiff learned, when he called at the bank after receiving the letter copied above and asked Gardner how he came to take a second lien, that Gardner said it was all right, and stated that he had a letter from an attorney saying the equity in the property was worth $10,000. The plaintiff was unable to say how long it was after the money had been expended that Gardner told him of the other lien, but probably a week afterward. However, the plaintiff testified that he did not know that the notes in fact were only secured by a third lien, and that there were two sets of notes ahead of the notes sold by Abney to the bank for him. After the notes, bought by Gardner for Parr from Abney, came due, the plaintiff called on Gardner to know why they were not paid, and told Gardner that he (Parr) was expecting him to look after it.

The evidence further shows that when plaintiff was notified of the purchase of the Abney notes and called on Gardner, that Gardner had the notes and the transfer or other papers lying on his desk, and that Gardner said to him, "There's the papers"; that plaintiff did not examine them, as he thought Gardner was more familiar with the business than he was, as a banker. The plaintiff further testified that he expected a first lien, and would not think of taking a second lien; that Gardner told him it was not a first lien, but told him, as stated above, about what the attorney said about it, and that it was all right; that the first lien was for $15,000 on long time and small interest; that the parties who took that lien would not loan money for over one-half of the valuation of the property; that Gardner did not tell him that there were other notes.

The plaintiff carried a deposit account with the defendant bank from 1911 up to the date of the transactions involved here, except during the period of one year, when he was absent in California. It is shown that the bank requested plaintiff to purchase a $500 United States bond during the World War. This was of the first issue, and thereafter they charged him in every subsequent issue with $500 worth of the bonds, and wrote him a letter to that effect. Plaintiff thus had in said bank $3,600 worth of Liberty bonds and $100 worth of stamps, making $3,700. He never saw the bonds, but left them in the bank. In a conversation with Gardner, vice president of the bank, plaintiff mentioned the

fact that he wanted to take stock in the Wichita Falls Building & Loan Association, and Gardner advised him not to do it, and said that he would not put "all his eggs in one basket," and said that they had opportunities every day to make good investments. Plaintiff told Gardner in that conversation, if he had a good chance to make a good loan for him to go ahead and do so. He further testified that he was transacting business at that time with the Wichita Bank & Trust Company, with whom he had been doing business for 11 years, and consented to allow the bank, through its vice president, Mr. Gardner, to make an investment for him; that he was not consulted by the bank or any officer in it relative to the notes purchased before the deal was closed and the money paid.

Plaintiff alleges in his petition that he relied upon the ability of said bank, its officers and agents, to safely invest the proceeds of the sale of said bonds, as they agreed to do, and having the utmost confidence in said institution with which he had so transacted his business to deal honestly and fairly with him in the lending of his money and purchasing of such notes, he made the above agreement. It will be noted that the notes sold by Abney to Gardner for the plaintiff were two of a series of four notes, executed by Peter Westland, payable to the order of Hamp P. Abney, three of which notes were for $1,000 each and one for $1,257. The two last-maturing notes, each for $1,000, were transferred to Mrs. Donna Rainey, giving her in such transfer a superior lien to the two prior notes which were later transferred to Parr, making the lien securing the notes sold to Parr a third and inferior lien to the $15,000 and inferior to the notes sold to Mrs. Rainey.

We are of the opinion that the bank was not entitled to insist on the delay of the plaintiff in bringing his suit as a defense, for the reasons that, while the evidence shows that plaintiff was informed of the fact that the notes which Gardner had purchased were subordinate to the $15,000 debt, he was not informed that he was secured only by a lien which was subordinate to other debts also, and that this was at a time when the whole transaction had been closed and the money paid over to the bank; and, further, that Parr was at that time informed by Gardner that the notes were good, and that, while there was a first lien for $15,000, the security was worth double that amount.

The defendant bank nowhere pleads any injury to it in the delay of the bringing of the suit. There is no pleading by the bank that, if Gardner was guilty of a violation of his duty to his employer, he was responsible to them for any loss that was occasioned by his conduct in injuring Parr by giving him a cause of action against it. There was no pleading making Gardner a party and asking for judgment over against him; neither did they plead the insolvency of Gardner as an excuse for their failure to make him a party to the suit. No other showing was alleged or proved by which Parr's delay in bringing the suit placed the bank in a worse position to its injury.

In the case of G. C. & S. F. Ry. Co. v. Donahoo, 59 Tex. 132, where the husband had granted the railway a right of way over the wife's land, the wife sued to recover the land and for damages, the railway company pleaded that it had a deed from the husband, pleaded want of notice to it of the wife's title, and that the company had expended a large sum of money in building its road upon the land, and that Mrs. Donahoo has assented thereto and was thereby estopped, the Supreme Court said:

"We are not aware of any rule of law which deprives any person of the right to recover whatever damage such person may sustain, simply because the injured person remains silent, or does not indicate to a wrongdoer, while the act from which the injury is received is being committed, that full damage will be sought for the injury resulting from the wrongful act. It is not contended that the plaintiff did any act which misled or induced the defendant to do what it would not otherwise have done; but, upon the contrary, it appears that she refused to grant the right of way."

In this case the plaintiff had no opportunity to protest against the transaction of the Abney notes, but is only charged with knowledge thereof after the whole trade had been concluded. Daugherty v. Yates, 13 Tex. Civ. App. 646, 35 S. W. 937; Halbert v. DeBode, 15 Tex. Civ. App. 615, 40 S. W. 1011.

[6] No estoppel can arise from a transaction in behalf of one whose position has not been prejudiced thereby. 6 Michie's Texas Digest, p. 1070; Masterson v. Little, 75 Tex. 682, 698, 13 S. W. 154.

We therefore hold that, while the purchase of the Abney notes by the bank through its vice president was ultra vires, the bank, having received a pecuniary benefit from the transaction, could not defeat the plaintiff's cause of action by pleading and proving such want of power, or that it asserted its charter powers. We also hold that mere delay on the part of the plaintiff in bringing suit after he was informed that the notes purchased were secured only by a second lien on the land, does not estop him from a recovery in view of the benefits received therefrom by the bank.

The evidence in nowise showing any knowledge or participation in the negotiation attending the sale of the notes by Abney to Parr on the part of defendants Mrs. Abney, Mrs. Rainey, and Mrs. Hanson, the verdict and judgment that no conspiracy existed as between them, Abney, and Gardner was correct, and as to them the judgment will be in all events affirmed.

[7] As to the charge of conspiracy between

Gardner and defendant Abney, plaintiff, in view of such jury verdict, urgently presents one alleged error and contends that such error led to the result of the finding that there was no conspiracy as between Gardner and Abney to defraud the plaintiff by the sale of the notes to him. The error so urged is that the court refused to give plaintiff's special charge No. 14, which is in words as follows:

"You are instructed, as a part of the law in this case, and in connection with special issue No. 10, that a conspiracy may be proven in law by circumstantial evidence."

Upon the question of conspiracy, the trial court submitted to the jury the following:

"Issue No. 10. Did the defendants Abney and Gardner and Mrs. Hanson, or any two of them, enter into any agreement or understanding for the purpose of defrauding the plaintiff, Parr, out of the proceeds of his Liberty bonds, or any part of them?"

The trial court did not define to the jury what would constitute a conspiracy; neither was he requested so to do. Plaintiff insists that the jury should have been told that the conspiracy could be established by circumstances and so aid them in determining the question of conspiracy. The defendant Abney contends that, if a charge on circumstantial evidence is given in a civil suit, circumstantial evdence should first be defined by the trial court and such definition should be limited to a question supported solely by circumstantial evidence; that to give the special issue tendered by the plaintiff and refused by the court would, without such definition, have confused and misled the jury into believing that the court thought there was circumstantial evidence tending to prove fraud.

[8] In view of the reversal of this case and of another trial, we do not think it well to discuss the evidence, but will only say that under the facts and circumstances in evidence the plaintiff was entitled to have the special charge submitted to the jury.

"Where a litigant relies on circumstantial evidence, it is proper, and it is his right, to have the court charge the jury that they may consider that character of testimony in determining the issue." Jones v. Hess (Tex. Civ. App.) 48 S. W. 46, 47; Rounds v. Coleman (Tex. Civ. App.) 214 S. W. 496, 497; Rowley v. Braly (Tex. Civ. App.) 286 S. W. 241, 245.

We think this charge should have been given to the jury, notwithstanding the court did not submit to them a definition of "conspiracy."

We have considered the other propositions and assignments, and do not think they are likely to arise on another trial, and, for the reasons stated, we reverse the judgment of the trial court as to the Wichita State Bank & Trust Company and Hamp P. Abney, and remand same to the district court for a new trial, but as to Mrs. Jeannette M. Abney, Mrs. Clara Hanson, and Mrs. Donna Rainey, the judgment is affirmed.

### On Appellant's Motion for Rehearing.

[9] On the original hearing of this cause in this court, counsel for appellant and appellees mentioned the insolvency and death of appellee W. W. Gardner, and we were thereby led to believe that as to appellee Gardner the case had been disposed of.

The death of a party pending an appeal to this court not altering the status of the case in this court, we order that the judgment heretofore rendered in this court be so corrected in our disposition of the appeal to read that the judgment of the trial court be reversed and remanded as to the appellees the Wichita State Bank & Trust Company, Hamp P. Abney, and W. W. Gardner, and that the costs of appeal be taxed accordingly.

Appellant's motion for rehearing, that the judgment be reversed and rendered, and that the costs be retaxed, is in all things overruled.

### Appellees' Motions for Rehearing.

The appellees criticize our citation of the case of the City National Bank v. Morgan (Tex. Civ. App.) 258 S. W. 572, and claim that the quotation made by us from that opinion does not present the real holding of the court in that case; also that, in the same case on another appeal [(Tex. Civ. App.) 277 S. W. 403], we held that Judge Boyce in the first case laid down abstract propositions based on the plaintiff's pleadings, which were not intended as an adjudication of the rights of the plaintiff under the evidence in the case. We did make that assertion in reply to a proposition made by the parties in that case, but we did not intend to say, and, the language of the opinion in the last-cited case cannot be made to bear the construction, that we recognize the rule to be that there would be no liability independent of a contract.

The second appeal was taken from a trial had in conformity to Judge Boyce's ruling; the case was submitted upon a proper charge at the second trial, and, because the jury found upon every issue of facts submitted to them, we affirmed the judgment of the trial court.

In this case, the question of solvency or insolvency of Abney is absolutely immaterial to the decision of the questions discussed. The facts in the case are almost without dispute. Do such facts constitute, in their relation to the conduct of the parties, such circumstances as should go to the jury under proper instructions, for them to weigh in deciding whether or not there was a conspiracy between the bank, Gardner, and Abney? We think so.

In this case there is no direct evidence of such conspiracy between the parties and the jury should have been told that fraud could

be shown by circumstantial evidence, so that there would be no question but that they passed upon the main question (i. e., the existence of a conspiracy) from all of the facts and circumstances in evidence.

The rule that we have applied here is not dependent upon the case being based wholly upon circumstantial evidence, for, in the absence of direct evidence of fraud, many facts that are shown by uncontroverted evidence might be circumstances leading to a conclusion of fraud.

All motions for rehearing are overruled.