### J. M. DAUGHERTY v. P. E. YATES.

Delivered May 13, 1896.

**1. Limitations—Lands Deeded by Ancestor.**
Heirs cannot prescribe under the statute of limitations, when their ancestor has conveyed the premises by his deed.

**2. Estoppel—Representations Without Knowledge.**
An estoppel in pais cannot arise from representations made without knowledge of the facts, and without the intention that they should be acted upon.

**3. Trespass to Try Title—Charge of Court—Identification of Land.**
In trespass to try title, where the description of the land in plaintiff's petition is copied from his deeds, and where the issue is whether the land in controversy is that described in plaintiff's deeds, extrinsic evidence being necessary to identify it, it is error for the court to charge the jury that, if the land sued for and described in plaintiff's petition is the same tract as that described in the deeds introduced in evidence, they would find for plaintiff.

**4.  Deeds—Quit-claims—Purchaser in Good Faith.**

Deeds conveying only the "right, title, interest, and claim" of the grantors are mere quit-claims, and one holding under them cannot claim as a purchaser in good faith.

**5.  Charge of Court—Wrong Reason Given.**

A charge founded on the wrong reason is not erroneous, when a good reason is apparent from the record.

**6.  Acknowledgment Before Justice of the Peace—Seal—Notice.**

An acknowledgment taken before a Justice of the Peace, who is an ex officio notary public, should have a notary's seal affixed, to entitle the instrument to record; and if it has not, the record is not constructive notice.

**7.  Defective Acknowledgment—Presumption on Appeal—Notice.**

Where on the trial the execution of a deed was proved as at common law, and there arises a doubt as to whether it was properly acknowledged, the appellate court will not presume that it was; and therefore its record carried no notice.

**8.  Improvements—Defective Record of Deed—Diligence.**

Where the record of a deed carried no notice, on account of a defective acknowledgment, one placing improvements on the land conveyed by such deed, after due diligence to ascertain the location of his own land as separate from that of the grantee therein, being after such diligence mistaken as to its location, is entitled to recover the value of such improvements.

**9.  Record of Deed—Notice—Description.**

The record of a deed will be constructive notice, if one, taking the description contained therein, can, from and by it, go upon the land and identify it.

**10.  Erection of Improvements—Care in Ascertaining Title to Land.**

Where one has knowledge that another owns land in a certain survey, it is his duty to use ordinary care, before making improvements, to ascertain that the land in that survey on which they are to be placed is his.

APPEAL from Kaufman.  Tried below before Hon. J. E. DILLARD.

*Lee R. Stroud,* for appellant.—1.  Where defendant improves in actual good faith, and where plaintiff's deed is not good record notice, or where it so meagerly describes the land that a person of ordinary diligence would not identify it from the record description, then in such case the defendant is entitled to recover pay for valuable improvements in good faith.  House v. Stone, 64 Texas, 678.

2.  The deed was only acknowledged before a "J. P." in that capacity, and was not record notice; and the description of the land was not such as would constitute record notice.  66 Texas, 678; 5 Texas Civ. App., 675; Rev. Stat., art. 4311.

*Huffmaster & Huffmaster,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This is an action of trespass to try title, with petition in the statutory form, in which the land sued for is described as follows:  "A part of league and labor No. 39 of King's block of surveys on East Fork of Trinity River, situated in Kaufman County, beginning at stake in bottom in line between league and labor No. 39 and 40, from which a double elm 12 in. dia. brs. N. 61 W. 4 vrs.; thence S. 45 E. 201½ vrs., through timber, to stake in prairie,

from which a red oak 30 in. dia. brs. S. 35 W. 7½ vrs.; thence S. 45 W. 750 vrs., through timber, to stake in edge of small prairie, from which an oak 24 in. dia. brs. S. 50 E. 5 vrs., an oak 12 in. di. brs. N. 47 E. 6½ vrs.; thence N. 300 vrs., stake in bottom, from which three pecans brs. S. 46 W. 3½ vrs.; thence N. 45 E. 650 vrs. to beginning; containing twenty-five acres of land."

The answer contained a demurrer to the sufficiency of the description of the premises; plea of not guilty; pleas of three, five, and ten years' limitation; of estoppel; and improvements in good faith.

Upon the trial a verdict was returned and judgment entered thereon for appellees, from which we have this appeal.

The appellant and appellee both claim through Bailey Daugherty as the common source of title, the former by purchase, the latter as heir, and under deeds from other heirs, as hereinafter shown.

Commencing at the common source, the title of appellee is as follows:

1. Deed executed by Bailey Daugherty to J. E. Gilkey on June 1, 1876, conveying twenty-five acres of land, and giving the same description of it as is above copied from appellee's petition. It was authenticated as follows:

"The State of Texas, }
"Kaufman County.    }

"Before me J. B. Newberry, J. P. Precinct No. 2, in and for Kaufman County, this day personally appeared Bailey Daugherty, to me personally well known, and a citizen of said county, and acknowledged that he had signed and delivered the foregoing conveyance for the purposes and consideration therein expressed, the day and date thereof:

"In testimony whereof, I have hereunto signed my name officially and affixed the impress of the seal of my office, in the town of Forney, on this the third day of June, 1876.          J. B. NEWBERRY,
                                                    "J. P. pre. No. 2, K. Co."

—and was filed for record and recorded July 12, 1876, in the records of deeds in the office of the County Clerk of Kaufman County.

2. Deed from J. S. Gilkey to P. E. Yates, conveying same land, and giving same description, executed December 4, 1882, duly acknowledged and properly recorded in office of County Clerk of Kaufman County, December 13, 1882.

3. Deed from P. E. Yates to A. W. French, giving the same description and field notes as in the preceeding deeds. This deed conveys other lands, and reserves a vendor's lien on all to secure three notes given for the purchase money, of $495 each. It was executed August 21, 1883, acknowledged December 5, 1883, and recorded December 12, 1888, in records of deeds of Kaufman County.

4. Deed from A. W. French reconveying the 25 acres in controversy to appellee, P. E. Yates, executed March 12, 1889, duly acknowledged

on same day, and recorded December 4, 1889, in records of deeds of Kaufman County. This deed contains same description as the others.

The chain title running up to Bailey Daugherty, the common source, is as follows:

1. Patent from the State of Texas to Thomas W. Ritter to 239 acres, of which survey the land in controversy is a part, which bears date September 9, 1879.

2. Deed from Thomas W. Ritter and wife to H. K. Valentine, conveying headright certificate No. 505 of Thomas W. Ritter, and the land located by virtue thereof, which is the land described in the patent, dated October 21, 1867, acknowledged by grantors on same day, and duly recorded February 3, 1874, in proper records of Kaufman County.

3. Deed from W. K. Jones and wife, Sallie, formerly Sallie Valentine, Dan Valentine, and Baum Valentine, the only surviving heirs of H. K. Valentine, to Bailey Daugherty, conveying the Ritter headright certificate and the land upon which the certificate is located, dated January 22, 1873, duly acknowledged by grantors on same day, and recorded February 12, 1874, in records of deeds in Kaufman County.

It will be observed that the deed from Bailey Daugherty to J. S. Gilkey was made before the land was patented, and does not name the survey on which it is located, further than it states it is a part of survey No. 39, and calls to begin on line between league and labor Nos. 39 and 40. There was then no survey 39, but there had been such at an early day, and it was floated, and, when floated, a great many little surveys were located upon the land formerly covered by it. One was the Thomas W. Ritter, which contained 640 acres, until the patent issued in 1874 for only 239 acres.

The appellant's father, Bailey Daugherty, died in 1877, and J. H. Ritter being on the survey, with about 120 acres enclosed, claiming an undivided interest with Daugherty's heirs, a partition was agreed upon in which about 101 acres, including the 25 acres sued for, was allotted to the heirs. The appellant, a son and heir of Bailey Daugherty, having never seen either his father's deed to Gilkey or its record, and having improved and fenced the land in 1886, purchased, on April 7, 1888, paying a valuable consideration therefor, the interest of some of the heirs, and on October 30, 1889, the interest of the remaining heirs of his father in the land.

The appellee testified that he knew defendant (appellant) and the other Daugherty boys were improving and inclosing the land in 1886, and that he did not say anything to them about fencing his land, because he did not know at the time it was his. The testimony strongly tends to show that appellee did not believe the land in controversy was his until in February, 1892, when he had it located by a surveyor; for he testified himself that, just after he got the land back from French-March 12, 1889, at a time when appellant asked him if he had any objections to his fencing it, he told him his 25 acres lay west of appellant's field, and that in 1892, when he went with the surveyor to locate

the land, he went in the bottom west of appellant's field, and told the surveyor he thought the land was there. Before the surveyor located it he made the same statement as to the situation of his land to other parties. From the time appellee went in possession of the land, in 1886, until the suit was instituted, he continued in possession, using and claiming it as his own, paying all taxes thereon; or rather, the testimony tends to show these facts.

The foregoing statement of the evidence was deemed necessary to the consideration and understanding of the questions raised by appellant's assignments of error; and it may be necessary to make further statements as we proceed with our opinion.

The first assignment of error insisted on, complains of the court's declining to charge on the five years' statute of limitation. In this we do not think there was error; for it seems to be settled law in this State that heirs cannot prescribe under this statute when their ancestor has conveyed the premises by his deed. Harris v. Hardeman, 27 Texas, 248; Voight v. Mackle, 71 Texas, 80.

The next assignment urged is, that the court erred in refusing to charge that appellee was estopped from claiming the interest in the land purchased by appellant from his co-heirs, by reason of having represented to and induced him to believe that his 25 acres was located west of the land in controversy. The assignment is not well taken, because there is no evidence tending to show that such representation was made with knowledge of the facts, or with the intention that appellant should act upon it, or that he did act upon it in making the purchase. These are of the essential elements in an estoppel in pais, and it cannot arise in the absence of them. Mortgage Co. v. Norton, 71 Texas, 689.

The court charged the jury that, if they believed from the evidence that the land sued for and described in plaintiff's petition is the same tract of land described in the title deeds introduced in evidence, it would be their duty to find for plaintiff the land in controversy. This charge is assigned as error, because the description in the petition and title deeds being alike, the former simply copied from the latter, they necessarily described the same land, and the jury could not but, under the charge, find for appellee. Abstractly, this charge would seem correct, but, when the facts bearing on the issue are considered, it is readily seen that the real issue is entirely eliminated by it. The issue is not whether the petition describes the same land that is described in the deeds, but is whether the land in controversy is that described in appellee's title deeds. The land in controversy is that 25 acres inclosed in appellant's field, located by the surveyor in 1892, and sequestered in this suit. The contention on the part of appellant is that it is not the land conveyed by his father to Gilkey and by Gilkey to appellee. The appellee contends that it is. The issue is, which of these contentions is correct? It cannot be said as a matter of law that the description in the deeds, without the aid of extrinsic evidence, identifies the land as that in controversy. Extraneous evidence was introduced pro and con. For

what purpose? It could not have been to show that the description of the land in plaintiff's petition and in the deeds was the same; for this was apparent from the instruments themselves. The purpose of its introduction on the part of the appellee was to identify the land situated in appellant's field and claimed by him as the land described in his title deeds; and, on the part of the appellant, to show that it was not the same. The burden was upon appellee to establish by a preponderance of evidence the affirmative of this issue. And it was the duty of the court to submit it in an appropriate charge to the jury. Cook v. Oliver, 83 Texas, 561.

The deeds to appellant from his father's heirs convey only their "right, title, interest, and claim" as heirs of Bailey Daugherty; and hence are merely quit-claims, under which the appellant cannot hold as a purchaser in good faith. Richardson v. Levi, 67 Texas, 361; Tram Lumber Co. v. Hancock, 70 Texas, 314. Therefore, there was no error in the court's instructing the jury that appellant could not defend as a purchaser in good faith. The court instructed the jury that appellant was not such a purchaser, because the deed from his ancestor to Gilkey was filed and recorded before the purchase. The ground upon which this charge is based is correct, provided the instrument was properly authenticated for record. That it was so authenticated, we cannot say from the record, as we will demonstrate in our consideration of another assignment. The wrong reason may have been given for appellant's inability to hold as a purchaser in good faith, yet, as a good one is apparent from the record, the charge was not erroneous.

It is insisted in other assignments that the court erred in failing to charge on improvements in good faith, because (1) appellee's deeds were not record notice, for the reason they were not properly acknowledged; (2) if the deed to Gilkey was technically record notice, the land was so meagerly described in it that no reasonable diligence would have discovered that it conveyed the land now claimed by appellant; and (3) appellee is estopped from denying that appellant is entitled to the value of his improvements, because he stood by when they were made and never asserted any interest in the land on which they were placed. The questions thus presented are by no means free from difficulty, and perhaps require more consideration than the business before this court permits time to give them.

The acknowledgment of the deed from Bailey Daugherty to J. S. Gilkey is herein copied. It shows to have been made before J. B. Newberry, "J. P. precinct No. 2, in and for Kaufman County," on the 3rd day of June, 1876. The letters "J. P.," used in the connection they are, both in the body of the certificate of acknowledgment and after Newberry's signature, evidently mean that he was the Justice of the Peace of precinct No. 2 of Kaufman County when the acknowledgment was made; for it is by these letters, used in this way, such officers indicate their official character in their signature to documents requiring them. When the acknowledgment certified to was made, Justices of

the Peace were ex officio notaries public, and, as such, authorized to take acknowledgments of deeds; but, in taking them, like all other officers, they were required to affix their official seal to their certificates of authentication, which was the seal of a notary public, and which a Justice of the Peace was authorized to use ex officio, and the only one, he having none as Justice of the Peace, independent of his being ex officio a notary public. This seal should have been affixed to the certificate of acknowledgment, to entitle the instrument to record; and if it was not, the deed was not properly recorded, and hence not constructive notice of its contents.

Nor would its record, even if seen, convey such knowledge as would put a party upon inquiry. It is stated in appellee's brief that "the seal affixed was the notarial seal." We have searched the record in vain for a verification of this statement. While we do not question its truth, there is nothing in the record from which it can be inferred. The inference might be made if the instrument had been introduced under the provisions of Article 2312, Revised Statutes, 1895; but the record shows that "plaintiff proved the execution of this deed," presumably as at common law. So no inference one way or the other as to the seal of the notary being affixed to the certificate of acknowledgment should be drawn. And as the copy in the record does not indicate such seal, we must conclude there was none.

Assuming, then, that no seal was affixed to the certificate of acknowledgment, and, therefore, that the deed was not entitled to record, we think the appellant was entitled to his improvements made on the land, if they were, after due diligence to ascertain the location of appellee's land, placed there in good faith, without knowledge of the fact, if it be a fact, that the land in controversy was the property of the appellee, and the court should have so instructed the jury. But, suppose upon another trial it should appear that the notarial seal was affixed to the certificate of acknowledgment, and the record before us only failed to disclose that fact; then the question will be, is the description of the land in the deed so indefinite as not to furnish notice of appellee's ownership of the land claimed by him in this suit. If, taking the description from the deed, one could from and by it go upon the land and identify the premises in controversy as the 25 acres described in the instrument, then its record should be held constructive notice of appellee's title, and such notice will defeat a claim for the value of improvements. Parrish v. Jackson, 69 Texas, 614.

If, however, the description in the deed on record was sufficient to enable one to identify the land from it, we do not think that, under the evidence in this case, appellee would be estopped from contesting appellant's claim to the value of them by reason of their having been made with his knowledge, because the evidence shows that when they were made he was laboring under the belief that his land lay west of where the improvements were being placed. If the principal of estoppel, independent of the statute providing for the recovery of the value of

improvements made in good faith, can be invoked as a basis for such recovery, the party relying on it must prove the existence of the elements of an estoppel in pais; and the knowledge on the part of appellee that the improvements were being made on his land not being shown, but the evidence being that he had no such knowledge, there is an absence of an essential element of such an estoppel as is invoked.

If the deed to Gilkey was not properly recorded, or if it was entitled to record, and, though recorded, one could not locate the land in controversy from the description in the deed, and if from such record or from information obtained outside of it the appellant knew that appellee owned 25 acres in the Ritter survey, it was his duty to use ordinary care, before making his improvements, to ascertain that the land on which they were to be made was his and not appellee's; and if he exercised such diligence as a reasonably prudent man would under like circumstances to ascertain the location of his land as separate from that of appellee, and after such diligence was mistaken as to its location, and while laboring under such mistake he placed his improvements on appellee's 25 acres, believing such land to be his own, he would be entitled to recover their value. Butts v. Caffall, 24 S. W. Rep., 373.

In view of another trial, we have deemed it proper to make these observations respecting appellant's claim to the value of his improvement.

On account of the error indicated in the charge of the court, the judgment is reversed and the cause remanded.

*Reversed and remanded.*