SUZANNE PIERSON, a *feme sole,* v. NATHAN D. BILL, *et al.*

182 So. 631.

Opinion Filed July 6, 1938.

82

*A. Melrose Lamar* and *Paty, Warwick & Mooney,* for Appellant;

*Williamson, Cain & Baugher,* for Appellees.

BUFORD, J.—The appeal brings for review a final decree dismissing the amended counter claim of the defendant in the court below, appellant here, and decreeing that a certain mortgage dated October 13, 1925, and recorded on January 13, 1934, in the public records of Palm Beach County, Florida, in Mortgage Book 244, page 274, he declared void as against the title of the plaintiff, the appellee here.

The record shows the following salient facts:

On September 12, 1925, Suzanne Pierson and her then husband, J. Fred Pierson, conveyed the lands involved to Frederick Foster Carey. This deed was recorded on October 22, 1925. On October 13, 1925, Frederick Foster Carey executed a mortgage on the same property securing $24,000.00 balance of purchase price to Suzanne Pierson. This mortgage was not recorded until January 13, 1934.

On July 12, 1927, Frederick Foster Carey and his wife executed deed without warranty conveying the same property to William A. Alcock, which deed was recorded July 18, 1927. On July 14, 1927, Alcock executed deed without warranty conveying the same property to A. Madeleine Carey.

The record shows that Alcock was used simply as a conduit to convey the title without consideration from Frederick Foster Carey to his wife, A. Madeleine Carey.

On March 12, 1928, A. Madeleine Carey and her husband executed a mortgage to one A. W. McMillan to secure a non-negotiable note in the sum of $25,000.00 and, contemporaneously therewith, the mortgagors executed a collateral note which was negotiable but without security. On March 29, 1929, McMillan assigned the mortgage and transferred the collateral note to Central Farmers Trust Company. The assignment was recorded August 27, 1929.

The record shows that McMillan was an employee of Central Farmers Trust Company and, while he took the assignment, he took it for the benefit of Central Farmers Trust Company.

On February 15, 1930, A. Madeleine Carey and her husband executed mortgage to secure $25,000.00 to Harry T. Shriver. This mortgage was recorded February 17, 1930. There were certain delineations from the original mortgage by striking same out with pen and ink and the record shows that these delineations were made before delivery of the mortgage.

On June 16, 1933, ancillary letters testamentary upon the estate of Frederick Foster Carey were issued by the County Judge of Palm Beach County.

On October 4, 1933, proof of claim of Suzanne Pierson by her attorneys was filed in the County Judge's Court of Palm Beach County, Florida, against the estate of Frederick Foster Carey based upon purchase money notes made by the deceased to the claimant October 13, 1925. The claim filed shows the following:

"That your deponent accepted a mortgage from Frederick Foster Carey in the sum of $24,000, dated October 13th,

1925, on lots numbered 484, 486, 488, 490 and 492, in the addition known as Poinciana Park, Second Addition to Palm Beach, Palm Beach County, Florida, to secure said notes. Said Carey agreed to record said mortgage at his, Carey's, expense, but said mortgage was never recorded, although Carey represented that it had been filed. Suzanne Pierson."

On November 17, 1933, Shriver began foreclosure proceedings on the $25,000 mortgage, *supra.* On November 28, 1933, Central Farmers Trust Company, assignee, filed foreclosure suit against A. Madeleine Carey on the other $25,000 mortgage, *supra.*

On January 2, 1934, A. Madeleine Carey, widow, executed to Robert E. McNeill, Jr., a deed without warranty, expressly subject to the mortgages to Central Farmers Trust Company as assignee and to Shriver and to the outstanding tax liens and assessment. This deed embraced other land and personal property not involved in this suit. Following the habendum clause, there is a paragraph which reads:

"It is mutually understood and agreed that the grantee herein expressly neither assumes nor agrees to pay the above described mortgages, taxes and assessments, it being the intention of both parties to this conveyance that the grantee herein is simply purchasing the equity of the grantor herein in the above described real and personal property."

On January 4, 1934, Mrs. Carey's attorney presented the deed above referred to to Mr. McNeill's attorney. The deed was objected to by McNeill's attorney because of its unusual form and the absence of a general warranty, but was accepted when a title insurance agent, after inspecting same, agreed to insure the title.

On January 8, 1934, the foreclosure above mentioned were dismissed on complainant's motions.

On January 10, 1934, McNeill conveyed the land by

special warranty deed to Union Trust Company of Springfield, Mass.

On January 11, 1934, the Shriver Mortgage was released to Robert E. McNeill, Jr., the release being dated December 15, 1933, and Central Farmers Trust Company satisfied its mortgage under date of January 8, 1934.

The record shows that McNeill took title as Trustee for the appellee Bill and made the conveyance to Union Trust Company of Springfield, Mass., at Bill's direction and Union Trust Company held such title as it acquired as Trustee for Bill. When these facts came into the record Bill was substituted as complainant in lieu of the original complainant, Union Trust Company.

Final decree required Union Trust Company to convey title to Bill.

The disposition of this case turns upon the question as to whether or not the deed from Mrs. Carey to Mr. McNeill constituted such a conveyance of title as would defeat the unrecorded mortgage held by Suzanne Pierson, or whether or not the recitals in the deed were sufficient to put McNeill, who was acting as agent for Bill, on notice and inquiry as to infirmities of title in Mrs. Carey or as to incumbrances, which inquiry, if pursued, would have resulted in the discovery of the Pierson mortgage. There is no question involved here as to the effect of the deed as between Mrs. Carey and Mr. McNeill.

We must hold that the clause contained in the deed, *supra,* was sufficient to put the vendee on notice and inquiry. The deed on its face in effect said, that the vendor can convey only an equity in the property and proposed to convey her equity and her equity alone in that property.

The record shows that Mrs. Carey at the time of the execution of that deed was cognizant of the fact that the

$24,000 mortgage held by Suzanne Pierson was outstanding, unpaid and unsatisfied. It also shows that her attorney who negotiated the conveyance to McNeill was cognizant of those facts.

The record of the conveyance from Pierson to Carey shows that it occurred in the height of the boom period when it is a matter of common knowledge that few land transactions involving large sums of money were consummated for cash, but it was the common and prevailing practice for such transactions to be closed by the payment of part cash and balance secured by mortgage.

We do not hold that this was sufficient to put a subsequent purchaser on notice but it was a condition, which should have accelerated the suspicion which the record shows was aroused in the mind of McNeill's attorney when the proposed deed was presented to him for approval; and the record shows that he only approved the deed when the agent for the title insurance company agreed to insure the title based upon that deed.

If the vendee had pursued any sort of a reasonable inquiry to ascertain the status of the title he would have found the outstanding mortgage in the hands of Mrs. Pierson, the widow of the vendee who acquired title from the Careys, and he would also have found in the County Judge's office the claim of Mrs. Pierson, as widow, against the estate of Carey, deceased, for the sum of $24,000, with the statement that the same was secured by an unrecorded mortgage on the lands sought to be conveyed.

Had the vendee, McNeill, or the title insurance company, seeing this red flag of danger written into the proposed conveyance from Mrs. Carey to Mr. McNeill, demanded an abstract of title, that abstract, if properly made, would have shown that the records in the office of the County Judge of Palm Beach County, Florida, disclosed that Mrs.

Pierson held an unrecorded mortgage on the property sought to be conveyed to secure the sum o'f $24,000.

A great deal is said in the briefs concerning the conveyances from Carey to McNeill and from McNeill to Union Trust Company all of which were considered of little consequence because it is established in the record that McNeill acquired only a naked title such as it was to whatever it was and when he conveyed such title as he acquired to Union Trust Company he conveyed it acting as agent for Bill and conveyed it to Union Trust Company as the agent of Bill. It is too well settled to require discussion that one agent cannot convey realty to another agent of the same principal and thereby clothe the grantee agent with a status of a bona fide purchaser. If such procedure could so result, then fraud could be perpetrated without hindrance. A could procure conveyance without warrant to his agent B, have B to convey by special warranty to A's agent C, and then have C convey by general warranty to A's agent D, have D decreed to be his agent and to hold the title in trust for A and acquire benefits which would appear upon the face of the record to flow to D as a bona fide purchaser for value.

In this case when McNeill took the conveyance for and on behalf of Bill, Bill became the beneficial owner of just such title as McNeill acquired and that title could not be strengthened or affected by subsequent conveyances either to Bill or his agents taking and holding title for him.

Black's Law Dictionary defines a quit claim deed as a deed of conveyance operating by way of release intended to pass any title, interest or claim which the grantor may have in the premises but not professing that such title is valid nor containing any warranty or covenants for title.

In 105 American State Reports 854, we find the following note :

"Within the meaning of these terms as they are employed in this note, all instruments must be regarded as quit-claim deed which purport to release or convey only such 'title or interest as the grantor may have in the lands described. The words usually used are 'remise, release and quitclaim.' These words clearly manifest the intention of the grantor to convey to the grantee such interest or title as the former has in the property, and none other. Any other words which express the same purpose must be given a like effect and be subject to a like restriction. Thus, instead of employing the words of conveyance quoted above, the grantor may by his deed declare that he grants, bargains and sells all his right, title and interest, or all his right, title, claim and demand in and to the tract described; in which event, the instrument passes whatever title or right might have passed by a quitclaim deed; Fash v. Blake, 38 Ill. 363; but none other; Daugherty v. Yates, 13 Tex. Civ. App. 646, 35 S. W. 937; Hunter v. Eastham, 95 Tex. 648, 69 S. W. 66; Lamb v. Kamm, 1 Saw. 238, Fed. Case No. 8017. Terms in the deed, other than the mere words of conveyance, may throw light on the purpose of the grantor, and where such is the case, they should be given due effect."

And on page 858 of the same volume we find:

"Equities existing against the grantor of a quitclaim deed are enforceable against his grantee, except in so far as this rule may be modified by the registration acts of the State; Allison v. Thomas, 72 Cal. 562, 1 Am. St. Rep. 89, 14 Pac. 309; Young v. Channquist, 114 Iowa 116, 86 N. W. 205; Mann v. Best, 62 Mo. 491; Campbell v. Laclede G. Co., 84 Mo. 352; Hope v. Blair, 105 Mo. 85, 24 Am. St. Rep. 366, 16 S. W. 595; Arlington M. E. Co. v. Yates, 57 Neb. 286, 77 N. W. 677; James v. Drake, 39 Tex. 143; Threadgill v. Bickerstaff, 87 Tex. 520, 29 S. W. 757. This necessarily follows from the principle that such a conveyance transfers

only such title as the grantor has, and if this title is subject to pre-existing equities in his hands, it must be equally so when the title reaches the hands of his vendee."

On the same page is the following note:

"Under the registry acts in force in the several states, instruments affecting the title to real property are entitled to be filed for record and recorded in some public office, and all persons must thereafter take notice of their contents and, on the other hand, as to such instruments not so filed nor recorded, and generally as to equities existing against the grantor, whether evidenced by writing or not, subsequent purchasers or encumbrances in good faith, for value, and without notice are not prejudiced thereby, provided the instruments under which their encumbrance or title is acquired are first filed for record. Under these statutes, the question has arisen in nearly, if not all, of the states, whether the grantee in a quitclaim deed may be regarded as within their protection as against prior conveyances or encumbrances executed by their grantors or prior equities existing and enforceable against them. The argument has generally prevailed that a quitclaim deed purports to convey only the interest of the grantor, it cannot have any operation when he has already parted with his interest, and that it is not material that his grantee had no actual notice of that fact; that the restricted language of the conveyance is equivalent to notice and, as a final result, that he who accepts such a conveyance cannot, within the meaning of the Registry Acts, be a *bona fide* purchaser and as such entitled to protection against prior conveyances or encumbrances made by his grantor or equities existing against him;"

Supporting this note the case of Freis v. Griffin, 35 Fla. 212, 17 Sou. 66, is cited. There it was held:

"The grantee in a quitclaim deed is not regarded in this State as an innocent purchaser without notice."

In Alsterberg v. Bennee, 14 N. Dak. 596, 106 N. W. 49, the Supreme Court of North Dakota said:

"One who accepts a quitclaim deed is, in the absence of fraud, mistake, or other ground for equitable relief, conclusively presumed to have agreed to take the title subject to all risks as to defects or incumbrances, relying on such protection only as the recording laws afford him. The absence of express or implied covenants in a deed is equivalent to an express declaration therein that the grantor assumes to convey only his right or interest, whatever it may be, and that he declines to bind himself to do more. Headrick v. Wisehart, 41 Ind. 87; 3 Washburn on Real Property (6th Ed.) Nos. 2239, 2368; Thorp v. Coal Co., 48 N. Y. 253, 256; Wheeler v. County, 132 Ill. 599, 604, 24 N. E. 625; Peters v. Bowman, 98 U. S. 56, 25 L. Ed. 91; Cartier v. Douville (Mich.) 56 N. W. 1045."

While the deed here under consideration is not in the conventional form of a quitclaim deed, the fact remains that when it is measured by the contents within its four corners, it is neither more or less than just that.

The granting clause of the deed is, "has granted, bargained, sold and transferred and by these presents does grant, bargain, sell and transfer unto the said party of the second part and his heirs and assigns forever all that certain parcel of land," etc. There is no warranty of title nor right to convey. The habendum clause is, "To have and to hold the same in fee simple forever." Then follows the clause which has been heretofore quoted but which we again set forth, because of its importance here, as follows:

"It is mutually understood and agreed that the grantee herein expressly neither assumes nor agrees to pay the above described mortgages, taxes and assessments; it being

the intention of both parties to this conveyance that the grantee herein is simply purchasing the equity of the grantor herein in the above described real and personal property."

It is very clear that Mrs. Carey knew that there was a $24,000 mortgage outstanding and that she did not intend to convey title which she would guarantee against the encumbrance of that mortgage. The intent of the grantor is controlling when conveying title. See Black v. Skinner Mfg. Co., 53 Fla. 1090, 43 Sou. 919.

When McNeill, acting for Bill, accepted the Carey deed he accepted it with notice that there was no warranty of title, no warranty against encumbrance and, in fact, no pretense that the grantor was in position to convey anything more than an equity in the property.

It is recognized that "the vendor of land frames the covenants of the conveyances into which he enters. He may extend or limit them at pleasure or he may decline to introduce into the conveyance any covenants whatever, limiting the grant to such estate or interest only as he may have in the land and leaving the purchaser to take it with all the defects of title and subject to all encumbrances which affect or bind the estate." See Copeland v. McAdory, 100 Ala. 553, 13 Sou. 545; Tideman on Real Property, Sec. 853.

In Rabinovitz v. Keefer, et al., 100 Fla. 1723, 132 Sou. 297, it was held:

"The doctrine has long been recognized in this jurisdiction that the immediate grantee under a quitclaim deed, or deed of release, occupies the same position in respect to an unrecorded prior deed or mortgage as did his grantor, and takes subject to the same defenses, and is not therefore a bona fide purchaser without notice within the meaning of the recording Acts; but this rule will not be ex-

tended so as to apply to a subsequent grantee taking by warranty deed."

It was also held in that case:

"While there is some justification for the rule that a purchaser who takes a quitclaim deed may properly be regarded as charged with notice of defects and outstanding equities in his grantor's title, it would not be in keeping with the language and spirit of the recording statute to extend this principle to a subsequent purchaser who takes from such grantee by a deed with warranty, and who is entitled to the protection afforded by the recording statute against unrecorded prior conveyances, transfers or mortgages of which he was without notice."

This latter enunciation could have no weight in this case, however, because under the factual conditions the special warranty deed from McNeill to Union Trust Company was in effect only a conveyance from Bill to Bill and in nowise affected Bill's rights as against the party holding the unrecorded encumbrance.

In Sapp, *et al.*, v. Warner, *et al.*, 105 Fla. 245, 141 Sou. 124, it was said:

"In several jurisdictions the rule is that purchasers and creditors are charged only by construction with notice of the facts *actually exhibited* by the record made under the recording statutes, and not with such facts outside of the record itself, as might have been ascertained by inquiries which an examination of the record would have induced a prudent man to take. Neas v. Whitener-London Realty Co., 119 Ark. 301, 178 S. W. 390, Ann. Cas. 1917B 780; L. R. A. 1916A 525; Gilchrist v. Gouch, 63 Ind. 576, 30 Am. Rep. 250; Taylor v. Harrison, 47 Texas 454, 26 Am. Rep. 304.

"But the rule supported by the best authority is that the record is constructive notice to creditors and subsequent

purchasers not only of its own existence and contents, but of such other facts as those concerned with it would have learned from the record, if it had been examined, and inquiries suggested by it, duly prosecuted, would have disclosed. Nolen v. Henry, 190 Ala. 540, 67 Sou. Rep. 500, Ann. Cas. 1917B 792; Wetzler v. Nichols, 53 Wash. 285, 101 Pac. 867, 132 A. S. R. 1075; Gaines v. Saunders, 50 322, 7 S. W. 301; Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 35 L. Ed. 1063, 12 Sup. Ct. 239; H. B. Claflin Co. v. King, 56 Fla. 767, 48 Sou. Rep. 37; Gulf Coast Canning Co. v. Foster (Miss), 17 Sou. Rep. 683; Martin v. Neblett, 86 Tenn. 383, 7 S. W. 123.

"If in the investigation of a title, a purchaser, with common prudence, must have been apprized of another right, notice of that right is presumed as a matter of implied actual notice."

Mr. Justice Davis in writing the opinion of the Court in that case, cited numerous authorities supporting the enunciation.

It has been held that when a fact is known sufficient to put a subsequent purchaser upon inquiry he cannot close his eyes to it and excuse himself from pursuing the inquiry by taking the opinion of an attorney upon an abstract of the record title. If this could be done, the rule that "Whatever is sufficient to put a party upon inquiry;" etc., would be rendered nugatory. See Labrie v. Cartwright, 55 Tex. Civ. App. 144, 118 S. W. 785. Also see, to like effect, Krew, 7 Neumann, v. Bernard (Ark.), 238 S. W. 19.

For the reasons stated, the decree must be reversed and the cause remanded.

The court below in the final decree held that the appellee is shown to be entitled to subrogation in connection with the discharge by him of the Central Farmers Trust Co.

mortgage and Shriver mortgage, but entered no decree effectuating such remedy. We express no opinion as to whether or not the appellee Bill is entitled to decree awarding subrogation by reason of his having satisfied or discharged those two mortgages. Therefore, the reversal of the decree appealed from is without prejudice to the Circuit Court on proper application after timely notice and, if need be, after recasting of pleadings and taking of further testimony, to adjudicate the rights of the appellee Bill, if any he has, of subrogation in this connection.

So ordered.

Reversed and remanded.

WHITFIELD, BROWN and CHAPMAN, J. J., concur.