963 So.2d 749 (2007)
Jacqueline M. LEDEA-GENARO, Appellant,
v.
James W. GENARO, Appellee.
No. 4D04-3322.
District Court of Appeal of Florida, Fourth District.
June 20, 2007.
Opinion Denying Rehearing September 26, 2007.
*750 Tracy Belinda Newmark of Fixel & LaRocco & Newmark, Hollywood, for appellant.
Richard H. Gaines and Todd M. Feldman of Greenspoon Marder, P.A., Fort Lauderdale, for appellee.
WARNER, J.
The former wife appeals a final judgment of dissolution of marriage in which the trial court enforced the provisions of the parties' pre-nuptial agreement. She contends that the court did not follow its terms and also failed to award her temporary *751 or rehabilitative alimony. We conclude that the trial court abided by the terms of the pre-nuptial agreement and affirm.
Before their marriage, the parties purchased a home, taking title as joint tenants with rights of survivorship. In 2000 the parties married, but they separated sometime in 2002.
The wife worked in the finance industry and had a substantial income. However, her income dropped considerably after the parties separated. During the marriage she deposited her income into the parties' joint checking account. By contrast, the husband had retired from business and derived income from his investment portfolio, which decreased by about 25% during the marriage. He kept a separate checking account.
The parties entered into a pre-nuptial agreement prior to their marriage. Paragraph 13 of the agreement contained the following language with respect to the disposition of the marital home upon divorce:
In the event of a divorce initiated by either party, [the wife] shall vacate the marital home and deliver a Quitclaim Deed to the subject property to [the husband] in exchange for a complete, absolute release of her obligation under the mortgage note and mortgage and an indemnification from [the husband] for any and all obligations.
The agreement also contained provisions: 1) that each party waived claims against the other party's separate property, except that the wife would be entitled to half of the appreciation in the value of the husband's investment account; 2) that both parties waived their rights to support and alimony; and 3) that "[a]ny personalty that does not normally and ordinarily have title or ownership certificate (i.e., consumer appliances, furniture, and furnishings) shall be considered as owned by the party who purchased same."
Before the marriage, the parties entered into a contract with an interior designer to furnish their home. Under this contract, they purchased furnishings, most of which were paid for by checks from the husband's accounts. They also established a wedding registry at a store, and at the time of the final hearing the registry had a credit balance remaining. The balance reflected gifts to both the husband and wife, although the wife's name was on the account. Both the furnishings and the wedding account figured prominently in the divorce proceedings.
After the parties filed for divorce, the trial court ordered the wife to convey her interest in the home to the husband. The husband later sold it for a profit. The court also required the wife to reinstate the husband's health insurance, with the husband responsible to reimburse the wife for its cost until the marriage was dissolved.
In the final judgment, the trial court ruled that: 1) under the pre-nuptial agreement, the wife was not entitled to any of the proceeds from the sale of the marital home; 2) under the pre-nuptial agreement, all items purchased under the design contract using the husband's separate account belonged solely to the husband; 3) the wife was not entitled to alimony; 4) the husband was entitled to half of the wedding registry credit; and 5) the wife "failed to meet her burden of proof" on her claim for reimbursement of the health insurance premiums she paid on her husband's behalf. The former wife appeals these rulings.
The court refused to award the wife any interest in the proceeds of the sale of the home, citing to the provisions of the agreement and concluding that the wife waived her interest in the home under Paragraph *752 13. The wife argues that the trial court erroneously interpreted this provision as waiving her interest in a share of the equity of the home, which she claims she did not waive.
Pre-nuptial agreements should be construed and interpreted in the same manner as other contracts. Mulhern v. Mulhern, 446 So.2d 1124, 1126 (Fla. 4th DCA 1984). "[T]he applicable standard of contract interpretation is one which is realistic, based upon the contract's plain meaning, unless the context of the contract demonstrates the parties' intention that a different meaning be given." Id. The court may resort to rules of construction and extrinsic evidence only where the contractual language is ambiguous. Miller v. Kase, 789 So.2d 1095, 1098 (Fla. 4th DCA 2001).
The provision in the pre-nuptial agreement requiring the wife to quitclaim her interest in the marital home to the husband is completely clear, and the trial court's interpretation is correct. The agreement unambiguously required that the wife quitclaim her entire interest in the home to the husband in the event that a petition for dissolution was filed, and in exchange she would be relieved of any responsibility to pay the mortgage note.[1] A "quitclaim deed" is a deed that conveys a grantor's complete interest or claim in certain real property but that neither warrants nor professes that the title is valid. See Black's Law Dictionary 446 (8th ed.2004); see also Pierson v. Bill, 133 Fla. 81, 182 So. 631, 634 (1938) (defining a quitclaim deed as "a deed of conveyance operating by way of release intended to pass any title, interest or claim which the grantor may have in the premises but not professing that such title is valid nor containing any warranty or covenants for title").[2] Under the plain meaning of the agreement, the wife conveyed her entire interest in the marital home, and there was no need for a separate provision dealing with "equity" in the home.
In its ruling, the trial court also awarded to the husband all furnishings paid for from the husband's funds. It relied on the language of the pre-nuptial agreement in which the parties agreed to divide their property by providing that any personalty not having a title certificate would be owned by the party who purchased the property. The court found that payment constituted purchase of the property within the meaning of the pre-nuptial agreement.
The wife claims that furnishings bought under the design contract should be considered jointly owned. The design contract was signed by both parties prior to entering into the pre-nuptial agreement, and the furnishings were delivered to their jointly-owned residence. The wife argues that sales orders provided documentary evidence that the parties jointly owned the furnishings, as the invoices were sent to them jointly. However, the wife's argument that the invoices for purchase can be considered "ownership certificates" is refuted by the pre-nuptial agreement itself, which specifically lists "furniture and furnishings" as items that do not "normally *753 and ordinarily" have a title or ownership certificate.
The trial court equated "purchase" with paying for the furniture, as the husband paid for the furnishings with checks from his individual accounts. The pre-nuptial agreement provides that untitled personalty "shall be considered as owned by the party who purchased same." The most natural interpretation of the provision is that the party who actually pays for the property is the party who is deemed to have purchased it. We do not think that the trial court erred in giving the language its plain and ordinary meaning. Had the purchases been made out of the joint account, then both parties would have "purchased" the property. But, here, the husband paid for the purchases, and under the agreement that the wife entered into, he is the declared owner of the personalty.
As to the wedding registry, even though the wife's name was the only name on the store's account, that account is not a "title certificate," as contemplated by the pre-nuptial agreement. The wife admitted that it was funded by wedding gifts to both of them. Therefore, the credit may be said to be "purchased" with joint gifts, thus establishing joint ownership which the trial court divided.
The wife also contends that the trial court erred in failing to award her temporary or rehabilitative alimony. In the pre-nuptial agreement, however, "[e]ach party acknowledges that he or she is self-supporting and hereby waives any and all rights for support, maintenance or alimony or similar proceeding initiated under the laws of any jurisdiction. . . ." While the parties cannot waive pre-judgment support through pre-nuptial agreements, pre-nuptial agreements concerning post-dissolution support are enforceable. See Lashkajani v. Lashkajani, 911 So.2d 1154, 1157 (Fla.2005); Fernandez v. Fernandez, 710 So.2d 223, 225 (Fla. 2d DCA 1998) (prevailing law "still requires one spouse, who has the ability, to support the other more needy spouse until a final judgment of dissolution is entered even in the face of an antenuptial agreement to the contrary"). Here, however, the wife did not request any temporary alimony during the proceedings, but only at the final hearing. The trial court found that she did not prove a need for such alimony, and we conclude that it did not abuse its discretion. Further, the trial court correctly denied rehabilitative alimony, because the pre-nuptial agreement waived any support.
Finally, the wife claims that the court erred by failing to require the husband to reimburse his medical insurance costs. The trial court found that the wife failed to meet her burden of proof. We agree, as we can find no evidence in the record, nor has the wife cited to any, which provides the amount. While she says that the amount is a mathematical calculation which can be made from her pay stubs by dividing the amount charged for health insurance in half, we cannot find pay stubs in the record, nor is there any testimony to verify that half of the premium should be attributed to the husband. As the trial court said, the wife simply failed to prove the amount.
We thus affirm the final judgment in its entirety.
GROSS and TAYLOR, JJ., concur.

ON MOTION FOR REHEARING
WARNER, J.
We deny the appellant's motion for rehearing. However, we address two issues to clarify our ruling.
First, although we noted that the wife did not request temporary alimony until the final hearing, we did not hold that she *754 was required to request it prior to the hearing. The trial court also noted that the request did not come until the final hearing. However, the court denied relief, because the wife failed to prove her need for such alimony. We affirmed the trial court's ruling on that basis.
Second, with respect to the reimbursement of insurance payments, although the wife has now pointed us to a pay stub which shows what was deducted from her pay for medical insurance, it does not show the portion allocated to the husband's insurance. Furthermore, we note that in the proposed final judgment submitted by the wife, she did not include an amount owed but required an accounting and for the husband to pay within fifteen days of receiving the accounting from the wife. Of course, the wife had testified that she thought she had given the husband a statement of what he owed her, but she did not remember what that amount was. The trial court denied recovery because of a failure of proof, and the wife has not pointed to any competent evidence from which that amount can be determined. If the wife sought recovery for the amount of premiums, she should have presented that amount at the final hearing. There is no requirement that the court continue a trial or have additional hearings when one of the parties does not present or forgets to present evidence at the final hearing without excuse.
GROSS and TAYLOR, JJ., concur.
NOTES
[1] While the court indicated that this result might seem unfair, the agreement also required the husband to share half of the appreciation on his stock portfolio with the wife. Unfortunately for the wife, the value of the house went up, while the value of the stock portfolio went down.
[2] The wife cites to Snow v. Lake's Administrator, 20 Fla. 656 (1884), for the proposition that a quitclaim deed operates only to transfer possession of the property, but an examination of the Snow opinion reveals that Snow does not support that proposition.