DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**FAUZIA PARBEEN,**
Appellant,

v.

**MOHAMMED BARI,**
Appellee.

No. 4D21-431

[March 16, 2022]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Dennis D. Bailey, Judge; L.T. Case No. FMCE19-008159.

Cristobal D. Padron of Cristobal D. Padron & Associates, P.A., Coral Gables, and Michael H. Wolf of Mike Wolf Law, PLLC, Fort Lauderdale, for appellant.

Roberta G. Mandel of Mandel Law Group, P.A., Palmetto Bay, for appellee.

FORST, J.

Appellant Fauzia Parbeen ("Former Wife") appeals the trial court's final judgment of dissolution of marriage. On appeal, Former Wife argues the trial court incorrectly found that the Islamic prenuptial agreement ("the Mahr") entered into by Former Wife and her ex-husband, appellee Mohammed Bari ("Former Husband"), established a maximum amount of recovery under Florida law. We agree with Former Wife and reverse the trial court's decision, remanding for further proceedings.

**Background**

This case concerns a prenuptial agreement made by the parties on September 14, 2015, and its impact on their subsequent divorce. In lieu of a conventional prenuptial agreement, the parties opted instead to enter a type of traditional Islamic prenuptial contract known as a "Mahr." Although the agreement was entered into in Bangladesh, neither party claims that it should be interpreted under the secular laws of that nation.

The parties' Mahr agreement is only two pages long and contains few legally operative clauses other than an explicit promise by Former Husband to pay Former Wife fifteen lac Bangladeshi Taka ("15,00,000" Taka). Five lac Taka would be paid upon marriage, and ten in the event of a divorce.[1]

The latter portion of the Mahr agreement became operative when Former Husband filed a verified petition for dissolution of marriage on July 9, 2019. At the hearing on the petition, Former Wife argued that the ten lac Taka provided for in the Mahr agreement was the *minimum* amount she was owed by Former Husband and did not bar her from other forms of relief, such as equitable distribution and temporary support. Former Husband, however, claimed that the ten lac Taka owed to Former Wife under the Mahr agreement served to cut off any other financial liability he may have had, and thus was the *maximum* she could recover from the divorce.

Despite finding that Former Wife had some equity in the marital home, the trial court granted its title to the Former Husband and ordered Former Wife to vacate the property upon receiving the payment of this equity. The final judgment of dissolution of marriage concluded that the Mahr agreement otherwise limited Former Wife's recovery to ten lac Taka or other property of equivalent value. Citing the language of the Mahr agreement, the trial court denied Former Wife's request for temporary support.

While continuing to live in the marital home, Former Wife filed several motions for rehearing which the trial court denied. Eventually, Former Husband filed a motion to enforce the trial court's final order and have Former Wife removed from the marital home. This appeal follows.

## Analysis

We review *de novo* the question of whether the Mahr agreement signed by the parties serves to bar the Former Wife from recovery of an amount greater than that specified in the agreement. *See Hahamovitch v. Hahamovitch*, 133 So. 3d 1008, 1012 (Fla. 4th DCA 2014); *Akileh v. Elchahal*, 666 So. 2d 246, 248 (Fla. 2d DCA 1996). Furthermore, we review the sufficiency of factual findings made by the trial court for competent, substantial evidence. § 61.075(3), Fla. Stat. (2020).

---

[1] The trial court determined that "10,00,000" Taka had a United States Dollar value of $11,772.43.

Former Husband and Former Wife both claim that the Mahr agreement is enforceable under Florida law. They are correct in this assertion. We have previously stated that prenuptial agreements are enforceable if they were entered into freely—even if the agreement is objectively unreasonable. *Waton v. Waton*, 887 So. 2d 419, 421 (Fla. 4th DCA 2004) (citing *Casto v. Casto*, 508 So. 2d 330, 334 (Fla. 1987)). While Florida caselaw regarding Mahr agreements is sparse, the Second District has held that they are enforceable as prenuptial agreements. *See Akileh*, 666 So. 2d at 248 ("[A Mahr's] secular terms are enforceable as a contractual obligation, notwithstanding that it was entered into as part of a religious ceremony." (quoting *Aziz v. Aziz*, 488 N.Y.S. 2d 123, 124 (N.Y. Sup. Ct. 1985))).

Here, the parties' primary point of disagreement concerns how the terms of the Mahr agreement should be interpreted. Former Husband claims that, under traditional Islamic ("Shari'a") law, a Mahr agreement functions as a type of insurance meant to protect a dependent spouse in the event of a divorce. According to Former Husband, concepts such as equitable distribution and alimony are foreign in Islam and, outside of the distribution of Former Wife's equitable share of the marital home, the Mahr should be read as the entirety of Former Wife's recovery. Former Wife, on the other hand, points to the total lack of language in the Mahr agreement stating an intent to abrogate traditional notions of equitable distribution and temporary support.

*Akileh* held that "Florida contract law applies to the secular terms of [a Mahr agreement]." *Id.* Thus, while the parties to a prenuptial agreement—Islamic or secular—may contract away their traditional marital rights, they must do so in a way that comports with Florida law, which has a rebuttable presumption in favor of equitable distribution of property in the event of a divorce. *See* § 61.075(1), Fla. Stat. (2020).

To overcome that presumption, the prenuptial agreement's plain language must unambiguously express a desire to waive equitable distribution. *See Ledea-Genaro v. Genaro*, 963 So. 2d 749, 752 (Fla. 4th DCA 2007). Overcoming the presumption in favor of equitable distribution requires more than a "boilerplate" reference to waiver. *See Weymouth v. Weymouth*, 87 So. 3d 30, 35 (Fla. 4th DCA 2012). Furthermore, "[t]he court may resort to rules of construction and extrinsic evidence only where the contractual language is ambiguous." *Ledea-Genaro*, 963 So. 2d at 752.

The same rules of contractual analysis apply to any prenuptial waiver of temporary support. *Khan v. Khan*, 79 So. 3d 99, 100 (Fla. 4th DCA

3

2012). "[A]n agreement of the parties that waives or limits the right to request temporary support and attorney's fees to a spouse in need in a pending dissolution action is a violation of public policy." *Id.* (citing *Belcher v. Belcher*, 271 So. 2d 7 (Fla. 1972)).

In the instant case, the Mahr agreement's plain meaning does not unambiguously express a desire to waive equitable distribution or temporary support. The Mahr agreement consists of a two-page pre-printed form with relevant blanks filled in by typewriter. Most of the information contained therein concerns the personal and familial details of the couple, in addition to the date, witnesses, and other procedural matters. Under "amount of dower," the agreement reflects the following insertion: "15,00,000 - (FIFTEEN LAC) TAKA ONLY," five lac of which was to be paid at the time of marriage. The Mahr agreement otherwise contains no reference to distribution of the couple's past, present, or future property. As a result, the Mahr agreement cannot overcome the strong public policy in favor of equitable distribution and, if circumstances merit, temporary support.

Former Husband's answer brief provides a detailed history of Mahr agreements, characterizing it as a traditional Islamic legal instrument intended to provide brides with a modicum of support in the event of a divorce. According to Former Husband, concepts such as the equitable distribution of property and temporary spousal support do not exist under Shari'a law. However, according to *Akileh*, Florida contract law applies to the secular terms of a Mahr agreement, and the Mahr agreement in this case does not bar Former Wife from seeking temporary support, alimony, or the equitable distribution of property. It states only that Former Husband is to pay Former Wife ten lac Taka upon the dissolution of their marriage. Consequently, the trial court erred when it held that the Mahr agreement barred Former Wife from seeking additional forms of distribution and support.

## Conclusion

As set forth above, the trial court erred in ruling that the fifteen lac Taka (five paid upon marriage, ten additionally paid if the parties divorce) provided for in the Mahr agreement was the maximum recovery to which Former Wife was entitled. Although the trial court appears to have made determinations about the distribution of equity in the marital home, alimony and attorney's fees independent of its erroneous equitable distribution ruling, we cannot discern whether that ruling affected these other determinations. Thus, the issues with respect to the marital home,

attorney's fees and alimony (beyond the essentially bridge-the-gap alimony provided by the Mahr agreement) should also be addressed anew by the trial court on remand.

*Reversed and remanded for further proceedings consistent with this opinion.*

CONNER, C.J., and KUNTZ, J., concur.

\*      \*      \*

***Not final until disposition of timely filed motion for rehearing.***